Gas Light and Coke Co. of New Albany *v*. City of New Albany *et al*.

No. 17,121.

THE GAS LIGHT AND COKE COMPANY OF NEW ALBANY
*v*. THE CITY OF NEW ALBANY ET AL.

SPECIAL FINDING.—*Conclusions of Law.*—*When Disregarded.*—A statement in a finding of facts that if the defendant is permitted to do certain things the plaintiff is without any adequate remedy, except the one he seeks to avail himself of is not a finding of fact but a conclusion of law and has no effect.

INJUNCTION.—*Contract.*—*City.*—*Right to Substitute Electric for Gas Lights.*—*Indefinite Terms.*—Where a contract between a city and a gas company for lighting the city streets for a term of twenty-three years provides that if, at any time thereafter the city shall determine that electric lights shall be substituted for gas lights the gas company "shall make the substitution of such electric lights instead of as many street lamps as may be agreed upon between the city and the company (the price at which said electric lights shall be furnished to be fixed by an equitable agreement between the city and the company,") such contract is not sufficiently certain to be specifically enforced, and if the city determines to substitute electric lighting prior to the expiration of the contract, injunction will not lie, at the suit of the gas company, to restrain the city from proceeding to secure such lighting by competitive bids.

SAME.—*Adequate Remedy at Law.*—When an injury may be fully compensated in an action at law for damages where the wrongdoer is solvent, the extraordinary remedy of injunction will not lie.

From the Harrison Circuit Court.

*A. Dowling*, for appellant.

*C. L. Jewett* and *H. E. Jewett*, for appellees.

McCABE, J.—The appellant sued the appellees for an injunction. Since the submission of this cause to this court the appellee, McDonald, has died, as is suggested by the appellees, counsel.

Under such circumstances the statute provides that the "judgment shall be rendered as at the term at which the submission was made without any change of parties." 1 Burns R. S. 1894, section 675; R. S. 1881, section 663.

The following judgment will therefore be entered as

of the date of the submission, to wit, November 13, 1893. Issues were formed upon the complaint and the venue having been changed from the Floyd Circuit Court, where the action was begun, to the Harrison Circuit Court, a trial of such issues in that court without a jury resulted in a special finding of the facts upon which conclusions of law were stated by the court favorable to the appellees. The appellees had judgment pursuant to the conclusions of law.

The conclusions of law and the action of the circuit court in overruling the appellant's motion for a new trial are assigned for and as the only errors.

The appellant has waived the alleged error in overruling the motion for a new trial by failing to point out the same in its brief.

The facts found necessary to a determination of the questions presented by the conclusions of law are substantially as follows: 1. That appellant is a corporation under the laws of Indiana, located within the limits of the appellee, the incorporated city of New Albany. 2. That said city is a municipal corporation, and appellee McDonald was its mayor at the institution of the suit. 3. That on March 22, 1870, said city, by its common council, adopted and passed the following ordinance, to wit:

"Section 1. It is ordained by the common council of the city of New Albany, That Washington C. DePauw, Nelson Fordice, and George V. Howk, and their associates, successors and assigns are hereby authorized to form a gas company, under the corporate name of 'The Gas Light and Coke Company of New Albany,' and to establish gas works for the lighting of said city with gas, and to that end they and their associates, successors and assigns, under the corporate name, are hereby invested with the exclusive right and privilege, for the full term

of twenty years from and after the 7th day of April, 1871, of using the streets, alleys, lanes, highways, and public grounds, within the present or future corporate limits of said city of New Albany, for the purpose of laying down therein the proper and necessary pipes for the conveyance of gas in and through said city, for the use of said city and its inhabitants: *Provided*, That the said company, to be formed as aforesaid, by its board of directors, shall agree and bind herself by resolution, a copy of which shall be certified to the mayor of said city within ninety days hereafter, to accept the terms and conditions prescribed in this ordinance: *And, provided, further,* That the said city of New Albany, in her corporate capacity, at any time before said 7th day of April, A. D. 1871, if she shall elect and determine to so do, shall and may become a stockholder in the said gas company to be formed as aforesaid, to an amount not exceeding one-third of the whole amount of the capital stock of said gas company, and the stock which may be taken in pursuance of this proviso shall be paid for by said city of New Albany in the manner hereinafter provided.

"Section 2. The price at which the said gas company to be formed as aforesaid shall furnish the city and its inhabitants with gas shall not exceed three dollars for each thousand (1,000) cubic feet, exclusive of government tax, provided that city orders shall be received at par in payment for all gas to be furnished the city by said company, and that the common council of said city shall have the right at all times to regulate the time of lighting and extinguishing the street lamps, and determining the quantity of gas to be consumed by the city.

\*　　\*　　\*　　\*　　\*　　\*

"Section 7. The said gas company, to be formed as aforesaid, shall furnish good, pure gas for all the public lamps of said city of New Albany, and light and ex-

tinguish the same and keep the same in good order and repair at and for the price and sum of $18 per annum, exclusive of the government tax, for each of the said lamps. The lamp posts and lamps for the public lamps shall be furnished by and at the expense of said city of New Albany."    *    *    *    *    *

4th. That afterward the terms and conditions of said ordinance were duly accepted by the board of directors of said company, by resolution duly passed by said board, which was certified to the mayor of said city on the 21st day of May, 1870, and within ninety days after the 22d day of March, 1870, the date of the passage and adoption of said ordinance.

5th. That on the 19th day of March, 1888, the common council of the city of New Albany, at a regular meeting had and held, etc.,    *    *    the following ordinance was passed and adopted, to wit:

"An ordinance supplemental to an ordinance entitled 'an ordinance to provide for the establishment of gas works, etc.,' passed by the common council of the city of New Albany, March 22, 1870.

"Section 1. Be it ordained by the common council of the city of New Albany, that all the rights and privileges, duties, and obligations held and enjoyed and owing by the gas light and coke company under and by virtue of an ordiance of the said common council passed March 22, 1870, and under and by virtue of the contract and agreement now and heretofore subsisting between the said gas-light and coke company of New Albany and the city of New Albany, subject to the modifications and alterations hereinafter mentioned, shall be, and the same are hereby extended and continued in force for the term of twenty-three years from and after the 7th day of April, 1888.

"Section 2. That in consideration of the extension of

the term of said ordinance contract and agreement, the price at which gas is to be furnished by said company to consumers thereof shall not exceed $2.10 per 1,000 cubic feet, with a discount of ten cents per 1,000 cubic feet if paid within the first ten days of the month following after the same becomes due, making the net price $2 per 1,000 cubic feet to all consumers of 5,000 cubic feet; the price of gas shall not exceed $1.85 per 1,000 cubic feet, with a like discount of ten cents per 1,000 cubic feet if paid within the first ten days of the month following after the same becomes due, making the net price to such consumers $1.75 per 1,000 cubic feet to all consumers of 10,000 cubic feet and over; the price of gas shall not exceed $1.65 per 1,000 cubic feet if paid within the first ten days of the month following after the same becomes due, making the net price to consumers last named $1.50 per 1,000 cubic feet, exclusive of any government tax; the price of gas furnished to the city of New Albany by meter shall not exceed $1.50 per 1,000 cubic feet, exclusive of government tax: *Provided*, That all gas furnished the city of New Albany under this ordinance the cost thereof may be paid in city orders at par, but all bills due from said city to said company shall be paid either monthly or quarterly, as the common council may elect.

\*        \*        \*        \*        \*        \*

"Section 6. The said gas company shall furnish good and pure gas for the public lamps of said city, and light and extinguish the same and keep the same in good order and repair for the price and sum of $18 per annum, exclusive of any government tax. The said lamp posts and lamps shall be furnished by and at the expense of said city, and the said city agrees to keep in service all public lamps heretofore maintained and hereafter ordered

under this ordinance, except the same is removed by agreement of said council and said company.

"Section 7. That if, at any time after the passage of this ordinance, the said common council should determine that electric lights should be substituted for gas lights upon the streets of said city, or any part thereof, the said gas company shall make such substitution of such electric light instead of as many public street lamps as may be agreed upon between the said city and said gas company, the price at which said electric lights shall be furnished to be fixed by an equitable agreement between the said common council and said gas company.

\* \* \* \* \* \*

"Section 9. That all ordinances and parts of ordinances now existing and in conflict with the terms of this ordinance are hereby repealed."

Section 10 provides that said ordinance is to take effect on the filing with the city clerk of a certified copy of the resolution of the board of directors of said gas company accepting the terms and conditions of the ordinance, and thereupon it is made the duty of the mayor to publish the ordinance and resolution of acceptance in the same manner that other ordinances are published. Such resolution of acceptance was filed with the city clerk.

7th. That on December 21, 1891, the common council of said city repealed section 6 of the ordinance passed March 19, 1888, supplemental to the ordinance above mentioned, passed March 22, 1870, providing for the establishment of gas-works. And the second section of said repealing ordinance was in the form of a resolution of said common council, to the effect that all gas lamps used for street lighting within the territory bounded on the south by the south line of Main or High street, on the east by the east line of Upper Fourth street, on the

north by the north line of Upper Oak street, and on the west by the west line of State street, and that the use of gas be discontinued for street lighting within the limits above prescribed, and the mayor is ordered to notify the gas-light and coke company that the lamps within said territory will not be used by the city on and after January 1, 1892. And the mayor was directed and empowered to take all necessary steps to prevent the use of gas in such lamps after January 1, 1892. And it was further resolved at said meeting that a committee be appointed, consisting of the mayor and three councilmen, to ask the different companies for bids for lighting the above named district with electricity, and to contract the same.

8th. That on December 22, 1891, the mayor, Morris McDonald, pursuant to the direction of said resolution, notified the appellant, in writing, of the above resolution, and that said gas company need not furnish gas within said territory after the time indicated in said resolution. And, on the same day, also notified appellant that proposals for furnishing 26 arc lights for the purpose of lighting that part of the city within the above named boundaries with electric lights, required to burn all night for every night in the year, for one year, with the option of the city to renew at the expiration thereof for a period not exceeding five years, were invited; that the light must be furnished on or before January 10, 1892; that appellant was invited to submit proposals therefor up to 10 o'clock A. M. on Saturday, December 26, 1891, when the bids for the same submitted by appellant and the other company invited to bid will be opened at the mayor's office.

9th. That on December 23, 1891, the appellant, in reply to the several notices above mentioned, addressed to the appellees a letter stating that "In accordance with

the provisions of section 7 of an ordinance of said city passed March 19, 1888, and accepted by appellant, if it is the determination of the common council that electric lights be substituted for gas lights upon the streets of said city designated in your letters, the appellant is ready to make such substitution  *  *  placing one electric light in place of as many gas lamps as may be agreed upon between said city and said gas company.  The gas-light company further agrees that the price at which said electric lights shall be furnished shall be fixed by an equitable agreement between said common council and the appellant, and the said gas company and the officers of said company will at any time meet the proper officers or a committee on behalf of the city  *  *  *  to make such agreement.''

10th.  That on December 24, 1891, the city, appellee, through its mayor, addressed to appellant, in response to its communication mentioned in the last preceding finding, that the city will be pleased to receive any bid from appellant for furnishing electric lights within the territory above mentioned, assuring the appellant that the contract would be awarded to it if its bid should be the best received.

11th.  That appellant had no notice of the intention of the city to make any change or substitution of electric lights within the territory covered by its resolution and ordinance passed on December 21, 1891, prior to the adoption thereof, and the only notice it had concerning the same was that contained in the letters of its mayor, dated December 22, 1891.

12th.  That the only proposition made by the appellant to the appellee relating to the substitution of electric lights was and is such as is contained in its letter of December 23, 1891, heretofore referred to.

13th.  That at the time the appellant received such

notice of the proposed substitution of electric for gas lights in that portion of the city embraced in the territory hereinbefore set out, and of the intention of the city to let the contract for electric lighting by competitive bids therefor, the appellant had no intention to make any bid therefor or enter into competition with any other rival company for such contract, but intended then and ever since has and still relies upon its exclusive right under its construction and interpretation of the terms and conditions of the ordinances hereinbefore set out to furnish such lighting.

14th. That the appellee city through its officers, assuming to act under the authority conferred upon them by the resolution of its common council of December 21, 1891, was threatening to let the contract for lighting the public streets within the limits in controversy with electric lights; and had invited from appellant and other corporations bids, and proposed to award the contract therefor to the lowest and best bidder, and still insists on the right to do so, and will unless restrained do so.

15th. That the appellant accepted the terms and conditions of the ordinance of the appellee city passed and adopted March 22, 1870, and relying thereon both the city and the appellant proceeded to act under the same, and thereafter continued so to do until the 22d day of December, 1891, and appellant, pursuant to the provisions of said ordinance, proceeded to lay out and expend large sums of money aggregating $60,000, up to the 22d day of March, 1888, in laying down gas mains, pipes, constructing ovens, furnaces, retorts, tanks, machinery, fixtures, and other necessary appliances upon the faith of such contract and agreement, and to enable it to perform the conditions thereof on its part; that since the adoption and acceptance of the supplemental ordinance of March 19, 1888, appellant has expended, in order to

improve its buildings, property and machinery, and upon the faith of such extension of its franchise and privileges thereby secured, the sum of $40,000 to add to its facilities and enable it to render more effectual service.

16th. That appellant fully performed all the conditions incumbent upon it under the terms of said ordinance and contract, to the satisfaction of appellee city up to and until about the 21st day of December, 1891; that about that time the lamps located in some portion of the business center of said city and including that portion now in controversy fail to give as bright a light as they had usually done theretofore for some reason not definitely shown, of which fact no complaint had been officially made to appellant.

17th. That appellant, at the date of the attempted repeal of section 6 of the supplemental ordinance hereinbefore set out and the proposed change in the lighting of the portion of said city now in controversy, to wit, on December 21, 1891, had and possessed a valuable gas-plant well equipped with all the latest and best improved machinery and appliances, with mains, pipes and fixtures laid and distributed through the different streets, alleys, highways, and public grounds, in said city with service pipes and mains, to the various public lamps in the streets of said city, as well as private lamps of the private consumers of its gas throughout said city; and was at that time engaged in supplying the city lamps with gas and lighting the same under the terms of its contract with said city at and for the price and sum of $18 per lamp per annum; and all other private consumers at and for the price stipulated in said supplemental amended and modified ordinances of 1888; that at that time there were 555 gas lamps belonging to and in use of the city to which the appellant was furnishing gas and lighting under the terms of said contract; that the

appellant is now supplying and lighting all the public street-lamps of said city under the terms of its said contract and ordinance, other than the public lamps within the territory in controversy in this suit; that appellant continued to supply, furnish, and light in all respects agreeably to the terms of the contract and ordinance, except as hereinbefore specified, until the 1st day of January, 1892, at which time said city, after appellant had refused to comply with the appellee city's request, not to further light them, and to prevent the use and lighting of said lamps, removed the' burners therefrom and otherwise so dismantled 44 of such lamps as that the appellant could not use or light the same; that within a short time thereafter, and during the month of January, 1892, the city, for a like purpose, removed from the remainder of said public lamps situate within the territory in controversy in this suit, to wit, 40 lamps, the burners and fixtures, and so dismantled them as to prevent the lighting thereof by the appellant; that they have ever since remained out of service, but that appellant has always maintained its readiness and been at all times fully prepared to furnish gas, and light said lamps and is now fully prepared and ready to furnish and light said lamps in accordance with the terms of said ordinance, as it had done theretofore and would have done so had it not been prevented.

17½. That if the appellee city is permitted to and does go on and consummate its threatened purpose of letting the contract to some other person or corporation, for lighting that portion of said city within the boundary hereinbefore described, either by gas or electricity, in the manner proposed and threatened and in disregard of appellant's rights, as it construes and assumes them to be under the terms of its said contract with said city, the appellant's said gas and electric plant would be greatly

depreciated in value and the profits materially reduced, and appellant would be subjected to great injury and damage and be without any adequate remedy except the one of which it seeks to avail itself in this proceeding.

18th. That in consideration of the extension of the appellant's franchise and contract under the terms of the supplemental ordinance of March 19, 1888, and its privileges thereby secured of furnishing the appellee city with gas and light for its public streets, embraced in the terms of its ordinances during such extended time, and the further consideration of the provision therein contained, securing to the said city the right at any time it should choose to make such election to substitute electric lights instead of gas lights in said city, or any portion thereof, and to enable it to be prepared for such a contingency, should it arise, as well as the further consideration of keeping along with the needs and demands of the times, and to enable it to supply private consumers with such improved methods of lighting as they might require; the appellant, shortly after the acceptance of said ordinance and during the time intervening since that date, and prior to December 21, 1891, established an electric light plant in the said city and expended about $30,000 in the purchase of machinery, dynamos, poles, wires, posts, masts, skeleton towers and other appliances necessary to the successful operation of such plant; that at the date of the attempted substitution of electric lights by the appellee city, the appellant had its electric plant in such a complete state through that portion of the city now in controversy, its poles distributed at the street intersections and its dynamos ready for use, and would have been ready to have made the substitution of electric light in lieu of gas light in that portion of the city now in controversy, in compliance with the terms of her contract with the appellee city and said

ordinance, upon reasonable notice therefor and agreement between them as to the number and location of such electric lights; that it has ever since been, and now is, fully prepared to furnish appellee city with electric lighting within the territory in controversy; and has ever since been, and now is, willing to do so upon the terms and conditions stated in its letter to the appellee city of December 23, 1891, heretofore referred to, as a compliance with what it construes the terms of said contract to be.

19th. That at the date of the proposed change and substitution of electric lights by the appellee city, and the proposed letting of the contract by the city for electric lighting, to wit, on December 21, 1891, there was organized and existed another electric-light plant in the said city, under the name of the Light and Heat Company, with full facilities and capacity to furnish electric lighting in that portion of said city now in controversy, which was, and is, desirous of bidding for said work, and has since been, and now is, able and willing to accept such contract and perform the same, if it should be awarded to it upon any bid it might make therefor in competition with appellant or otherwise.

20th. That at the time appellee city attempted to substitute electric light upon its said streets and discontinue gas lights thereon, to wit, on December 21, 1891, in that part of said city in controversy, the appellant had no notice that said city desired to substitute electric lights for any of the public lamps of said city; that it was not then, nor prior thereto, nor since that time, asked or notified to agree or confer with said city or its officers, agents or representatives as to the number of public lamps so to be discontinued or the number of electric lights to be substituted, nor the places at which they were to be put; and that no agreement as to the discon-

tinuance of any of such public lamps has at any time been made between it and said city; that no offer or attempt has been made by the appellee city at any time to fix by equitable agreement between it and appellant the price at which the electric light provided for in the contract and ordinance of March 19, 1888, should be furnished by the appellant, and that no proposition therefor fixing the number, location, or price of such lights has ever been submitted by appellant to said city.

21st. That the appellee city has declared its intention not to pay appellant for furnishing and lighting the public gas lamps of said city in controversy after January 1, 1892, and has not, since that date, paid anything thereon.

22d. There would be due appellant on account of such gas lamps in controversy, on account of appellant being prevented from lighting said lamps in accordance with the terms of its contract, if it has been wrongfully interfered with by the appellee city, its agents, officers and representatives, of profits it would have made thereon, $224.

23d. The assessed value of the property in the said city for the year 1892 is $11,000,000. The actual value of taxable property in said city is about $15,000,000, the present indebtedness is $400,000, the said city being solvent and responsible.

24th. That considering the population, size and business interest of said city, and the improved methods of lighting the same, by the establishment of electric plants for lighting purposes in such city, and the reduced rates at which such lighting can now be obtained, and could, at the date of the proposed substitution, as well as the superior quality of the light thus afforded over that existing at the date of the passage of the supplemental or-

dinance extending appellant's contract twenty-three years from April 7, 1888; and at the date of the proposed substitution, viz., December 21, 1891, the public interest, as well as private comfort and convenience of the citizens of that part of the city now in controversy demand, and did, at said last mentioned date, demand, a substitution of electric lighting for that of gas, and that said proposed change and substitution by said city at that time was in compliance with a general desire and demand of her citizens, and to promote the public interest and welfare of the city.

And the court stated its conclusions of law upon the foregoing facts as follows:

1. That that part of the contract set out and referred to in the plaintiff's bill of complaint, and which furnishes the basis of this controversy, is so uncertain and indefinite, and of such a nature and character as that the same is incapable of being specifically enforced in a court of equity.

2d. That considering the relative convenience and inconvenience to the respective parties, less inconvenience would result to the plaintiff by refusing the injunction than to the defendant by granting the same.

3d. That on account of the uncertainty in the terms, and the alleged breach of that part of the contract set out in the plaintiff's bill and referred to in the findings, and involved in the controversy, the plaintiff's bill is without equity, and is not, on this ground, entitled to the relief prayed.

4th. That for all the injuries shown to have been sustained by the plaintiff by any actual breach of the contract in suit, so far as the same is capable of enforcement, the plaintiff has an adequate remedy at law in an action for damages, and that the plaintiff is not entitled to a

perpetual injunction, for want of equity, and that defendants ought to recover their costs.

That part of the finding of facts which states in substance that appellant is without any adequate remedy, except the one it seeks to avail itself of, is not a finding of a fact but is a conclusion of law, which has no force or effect whatever in and among the finding of facts. Conclusions of law erroneously cast into the finding of facts do not control, for the court must act upon the facts found. *City of Indianapolis* v. *Kingsbury*, 101 Ind. 200; *Kealing* v. *Vansickle*, 74 Ind. 529; *Stalcup* v. *Dixon*, 136 Ind. 9.

Two questions arise on the conclusions of law which have been ably discussed in the briefs on both sides:

1. Does equity afford relief by way of injunction?

2. Are the ordinances set out binding and obligatory on the city?

Counsel for appellant earnestly contend that injunction is the proper remedy, and that on the facts stated in the special finding, the appellant was entitled to a perpetual injunction against the city. In support of this contention counsel quote and rely on section 1106 of High on Injunctions, which says: "While the remedy for past violations of contract is to be sought only in courts of law, the protection of contract rights, and the enforcement of specific covenants are matters which are properly cognizable in courts of equity. The jurisdiction by way of interlocutory injunction to restrain the violation of contracts is based upon the necessity of protecting the legal right, and is exercised for the prevention of irreparable mischief. To warrant a court of equity in interfering, the contract itself must be free from doubt, and the injury apprehended from its violation must be of such a nature as not to be susceptible of adequate compensation in damages at law."

But counsel fail in their argument to show that the facts found bring the case within the rule above laid down. They do not and can not show that the contract is one that makes the complainant's demands free from doubt. The contract, couched and embodied in the passage of the ordinances on the one side, and the acceptance of and reliance upon the terms thereof on the other,. clearly contemplates that at any time after the passage of the supplemental ordinance of March 19, 1888, the common council might determine that electric lights should be substituted upon the streets of said city, or any part thereof, and that such substitution should be made by the appellant gas company. The finding shows that the city determined that such substitution should be made in the district or portion of the city specified, on and after January 1, 1892. But the ordinance left the number of electric lights to be furnished in place of the gas lamps, and the price of the electric lights, to be fixed by an equitable agreement between the city and the gas company, to be afterwards made.

The contract then clearly gives the city the right to demand the substitution. This is conceded by the gas company, appellant, as shown by the findings of fact. It shows that it is ready, willing, and prepared to make the substitution, but it, in effect, says, as shown by the findings, that the substitution must be made, if at all, upon the terms as to price and number of lights as the gas company shall dictate; and if its terms are not complied with on the part of the city there can be no agreement as to price and number of electric lights, and hence that part of the contract giving the city the exclusive right to require the substitution to be made is completely defeated. This result reached under the amendatory or supplemental ordinance extending the gas company's contract for twenty-three years, it insists that it has a.

right not only to go on and furnish the city with light according to the old and discarded method of lighting cities, at the old price for twenty-three years, in spite of the provisions in the contract that the city should have the right of requiring the company to substitute electric lights, but it insists that the city shall not get any other company to furnish electric lights.   It is true, it says it is ready to agree with the city authorities as to price and number of electric lights to be furnished, but it not only objects to entering into competitive bids for such work with another company, but it nowhere says that it has offered or proposed to furnish and substitute the electric lights at such price as they are reasonably and fairly worth.   The contract relied on contemplates that they were to be furnished at what they were reasonably and fairly worth, because it says "the price at which said electric lights shall be furnished to be fixed by an equitable agreement between the common council and the gas company."

Equitable is defined by Webster as meaning "marked by a due consideration for what is fair, unbiased or im-. partial."   Therefore, the agreement provided for in the ordinance must be marked by a due consideration for what is fair.  An agreement forced on the city as a choice between that and doing without electric lights for 23 years would not be an equitable agreement.   This is an attempt to invoke the equity powers of the court to wield the extraordinary arm of its power to enjoin the city from violating its alleged contract.   The terms of the whole agreement between the parties has not as yet been definitely settled; and for that reason this extraordinary remedy can not be invoked according to the principles laid down in the quotation counsel has referred us to. It is also a familiar rule in equity that he who seeks equity must do equity.   Had the appellant offered to en-

ter into an agreement with the city, to substitute the electric lights at such price as they were fairly and reasonably worth, it would have occupied a much more favorable attitude in a court of conscience. It is true, in a court of law it might be just as incumbent on one party as the other to tender performance, but in a court of equity, seeking relief in the nature of specific performance, it is incumbent on the complaining party to tender performance. *Mather* v. *Scoles*, 35 Ind. 1; *Vawter* v. *Bacon*, 89 Ind. 565.

Courts will refuse specific performance on the ground of incompleteness of the terms, or of the uncertainty in the construction or in the application of the terms of the contract. If the parties have made no certain and definite contract, the court will not make a contract for them. Uncertainty in the following particulars has been held to defeat a claim for specific performance, viz: Uncertainty and indefiniteness as to the promise itself, as to the time and mode of performance, as to the amount of consideration, and as to when the consideration was to be paid; so specific performance has been refused where it was provided that the purchase-money must be paid on such terms as may be agreed between the parties. Lawson Rights and Remedies, section 2608; *Bowman* v. *Cunningham*, 78 Ill. 48; *Hamilton* v. *Harvey*, 121 Ill. 469.

In High on Injunctions, section 1120, it is said: "So, too, if there are disputes concerning the rights of the parties under the * terms and obligation of the contract itself, an injunction will be withheld until the rights of the parties are ascertained and adjusted."

And in section 1121, the same author says: "Upon similar principles, it is held that an injunction will not be granted in aid of an action for specific performance, when the agreement which it is sought to enforce is so

uncertain in its terms as not to be the subject of a decree for specific performance.''

Unless we eliminate that provision in the contract relating to the substitution of electric lights for gas lights the terms of the contract between the parties are too uncertain and indefinite to warrant interference by a court of equity by injunction. To do that would be to defeat the intention of both parties to the contract. Had the circuit court granted the perpetual injunction asked for, the city never could have substituted electric lights for gas lights for 23 years after April 7, 1888, so long as that decree remained in force, unless it did so at the expense of paying therefor whatever the appellant gas company might see fit to charge or demand for the same; that would be giving the appellant an unconscionable advantage. A court of equity will not afford relief to a party by way of injunction where it will result in such unjust consequences.

It is further said, in High on Injunctions, section 1106, that, ''While the remedy for past violations of contract is to be sought only in courts of law, the protection of contract rights and the enforcement of specific covenants are matters which are properly cognizable in courts of equity. The jurisdiction by way of interlocutory injunction to restrain the violation of contracts is based upon the necessity of protecting the legal right, and is exercised for the prevention of irreparable mischief. To warrant a court of equity in interfering, the contract itself must be free from doubt, and the injury apprehended from its violation must be of such a nature as not to be susceptible of adequate compensation in damages at law. And a doubt as to the correctness of the construction of the contract on which the injunction is asked is sufficient ground for refusing to interfere. Nor will an injunction be allowed to restrain the violation of

a contract tainted with champerty and maintenance. And if the contract is uncertain and vague in its provisions, or is of an unjust and oppressive character, the relief will be withheld.''

Section 1107, same author, says: ''The fact that ample remedy exists at law for the violation of an agreement, is always a sufficient objection to the interference of equity. Thus, where a railway has been constructed under a contract whose terms provide for its construction in a particular manner, for the protection of the owners of real estate over which the road passes, the remedy for violation of the agreement is not by enjoining the use of the road until the terms of the contract are complied with, but by an action at law for pecuniary damages, and in such a case equity will not interfere.''

To the same effect are *Allen* v. *Winstandly*, 135 Ind. 105; *Champ* v. *Kendrick*, 130 Ind. 545; *Hendricks* v. *Gilchrist*, 76 Ind. 369; *Ricketts* v. *Spraker*, 77 Ind. 371; *Caskey* v. *City of Greensburg*, 78 Ind. 233.

The finding shows that appellant had an adequate, complete and efficient remedy at law in an action for damages for a breach of the contract, even though the appellants' construction of the contract is the correct one.

Conceding that the city wrongfully repealed the sixth section of the supplemental ordinance of March 19, 1888, by which the city undertook to bind itself to keep in service all public lamps theretofore ordered, except the same be removed by agreement of said city and said company, and that it further violated its contract obligations to the gas company when it ordered all street lamps within the district in controversy to be taken out of service, yet the finding shows that the amount of appellant's damages occasioned by such alleged breach of contract is easily ascertainable, and in fact was ascer-

tained by the court as far as they had accrued, and that the city was solvent and able to pay it.

Assuming that the appellant's contention is tenable that it is not bound to enter into competitive bids with other companies to get the contract to furnish the electric lights, and that it is not bound to agree to furnish such lights at such price as they are reasonably and fairly worth, and that by its refusal or failure so to do, the original contract of $18 per lamp per year for furnishing gas still remains in force, and assuming that the threatened letting of the contract to another company will deprive appellant of the power of complying with its contract in furnishing gas for the lamps within the district in question, for the whole unexpired period of time its contract was to run, yet the finding shows that appellant had a remedy at law which was as adequate, complete, and efficient as any equity could afford. When an injury may be fully compensated in an action at law for damages where the wrongdoer is solvent, the extraordinary remedy of injunction will not lie. See the authorities last above cited. Also, *Laughlin* v. *President,* etc., 6 Ind. 223; *Smith* v. *Goodknight,* 121 Ind. 312.

The court, therefore, did not err in its conclusions of law.

We intimate no opinion as to the validity of the ordinances in question, for the reason that it is unnecessary, and because, as we are informed, that question is being litigated in another action between the parties.

The judgment is, therefore, affirmed.

Filed Dec. 14, 1894.