New York Johnson Motor Company, Inc., a corporation existing under the laws of the State of New York,

vs.

Johnson Motor Company, a corporation existing under the laws of the State of Delaware.

*New Castle, July 5, 1927.*

*Charles F. Curley*, for complainant.
*Robert H. Richards*, for defendant.

THE CHANCELLOR. A bill which seeks to enjoin the breach of such a contract as we are here concerned with, is a bill which in-

directly seeks the remedy of specific performance. There are many reported cases in which injunctive relief has been granted against the breach of a negative covenant, express or implied. The fact that the injunction operates only against the defendant's breaches and does not compel the complainant's performance, has not always been regarded by the courts as a sufficient reason for withholding the remedy. *Cramer v. Lewes Sand Co., ante p.* 329, 138 A. 78, recently decided by this court. In *Singer Sewing Machine Co. v. Union Button, etc., Co., Fed. Cas. No.* 12,904, Judge Lowell states the result of the cases as follows:

"If the case is one in which the negative remedy of injunction will do substantial justice between the parties, by obliging the defendant either to carry out his contract or lose all benefit of the breach, and the remedy at law is inadequate, and there is no reason of policy against it, the court will interfere to restrain conduct which is contrary to the contract, although it may be unable to enforce a specific performance of it."

The right to an injunction in such cases as this is tested by some at least of the well-established principles which prevail where the remedy sought is the direct one of specific performance. 4 *Pomeroy Equity Jurisprudence,* (*4th Ed.*) § 1692. Among the doctrines which are familiar in the law dealing with the equitable remedy of specific performance, none is more so than that which requires the terms of the contract to be certain and definite. Accordingly Professor Pomeroy in the section referred to states that the negative remedy of injunction will be denied unless the terms of the contract are certain and definite. See also 4 *High on Injunctions,* (*4th Ed.*) § 1136; *Gaslight & E. Co., etc., v. New Albany,* 139 *Ind.* 660, 39 *N. E.* 462; *Giles v. Dunbar,* 181 *Mass.* 22, 62 *N. E.* 985. The injustice of enjoining one party to a contract from its violation is too manifest for discussion when it is uncertain to what extent the obligations of the other party go in order for him to perform it. Inasmuch as the injunction is hoped to accomplish a specific performance by both sides to the contract, though its method is negative in operation, it ought never to issue in such cases if the contract is so indefinite as to leave in doubt what is necessary to satisfy performance by all of its parties.

These principles are of importance in this case, for under them if the contract here under examination is uncertain and in-

definite in its terms, the preliminary injunction ought to be denied. I turn, therefore, to the contract, breach of which is sought to be enjoined, to ascertain if its terms are sufficiently certain and definite to warrant the issuance of the injunction.

It is to be observed in the first place that what the complainant seeks is not an injunction against the continued breach of the last written contract dated December 1, 1925. That contract was automatically renewed. The complainant prior to January 1, 1927, had been contending that the renewal had been automatically effected by the contract's terms. The defendant, after some controversy on this point, recognized the fact of renewal by its letter of January 7, 1927. There was therefore a contract of some sort between the parties in existence on January 7th. But what were its terms? Here is where the parties to it are in disagreement. The defendant contends that the contract, if any, is the exact one which was renewed, evidenced by the writing of December 1, 1925. The complainant contends not only that the renewed contract embraces everything that was covered by the December 1st agreement, but also that the new types of motors and the acquaflyer which were developed since the date of the December 1st agreement and have been manufactured and marketed only since that agreement expired, are embraced within its subject matter. The December 1st contract makes no reference of course to these new articles. It does, however, make reference generally to "products." Does the renewed contract by force of this word embrace within its scope the two new motors and the aquaflyer? The complainant insists that it does, and therefore wishes to restrain the defendant from selling these products as well as the old ones to anyone except to itself. The defendant contends that the word "products" in the renewed agreement cannot be interpreted as covering the new articles. I shall pass by this particular point of controversy and shall assume, without deciding, that the new articles of manufacture are embraced in the word "products" appearing in the renewed contract.

But, assuming this, it means as to new subject-matter that certainty and definiteness are attained only in the matter of its identity. As to all other matters, there is complete uncertainty. What the complainant should pay for these new products, what it

should sell them for, and how many of them, especially of the entirely new product, the aquaflyer, it should be required to take, are matters which the old contract is of course silent upon. The complainant argues that the prices of the new products ought to be fixed according to a certain method suggested by it, and that the court should so determine. But for the court to do this would be for it to make a contract for the parties, a thing which, if anything is well settled in the law of specific performance, no court would be justified in doing. The so-called automatic renewal provided for in the renewal clause, is conditioned for one thing upon the specification of a proper number of motors for the ensuing season. If it be assumed that the act of renewal covered the new types of motors and that the number last specified would continue under the renewed agreement, while this assumption might satisfy the condition precedent to the renewal in so far as a specification of the number of motors for the ensuing season is concerned, yet what is to be said concerning the number of aquaflyers which should be taken by the complainant? The aquaflyer is not a motor and there is therefore nothing in the way of past dealings between the parties upon which we can base so much as a speculation touching the number of them to be taken. No discussion even, not to say agreement, is shown between the parties as to the number of aquaflyers the renewed contract should specify. Thus the contract which the complainant seeks to enforce by the particular injunction asked for is not the one last written, but is that one with new terms and subject matter, particulars upon which the parties never agreed and which this court is asked to define for them. As before stated, there can be no justification for the court's undertaking to make the contract for the parties.

It would be out of all reason to restrain the defendant from selling its new products except to the complainant, when the parties have never agreed upon what terms, etc., the complainant is obligated to take them. Upon the imposing of the restraint, the defendant might turn out to be deprived of its entire outside market and able to secure no market with the complainant because of failure to agree with it upon yet unsettled terms. To order a preliminary injunction under these circumstances would be highly inequitable.

This being the case, the injunction asked for should be denied.

Other points of importance were debated at the argument, but the foregoing considerations are so conclusive of the matter, that further discussion is not called for.

The preliminary injunction asked for will be denied and the rule discharged. Let an order be entered accordingly.