SHARPLESS-HENDLER ICE CREAM COMPANY, a corporation of the State of Delaware,

*vs.*

ESTHER DAVIS.

*New Castle, May* 14, 1930.

*Aaron Finger*, of the firm of Richards, Layton & Finger, for complainant.

*Arthur G. Logan*, of the firm of Marvel, Morford & Ward, for defendant.

THE CHANCELLOR. The first question is whether the defendant may introduce testimony showing that the complainant has no established wholesale price at which it sells ice cream, that it sells at various wholesale prices to different customers, and grants rebates in various forms and discounts from its socalled wholesale price whereby certain of its customers are more advantageously treated than others including the defendant if she continued to buy from the complainant.

I think the proposed testimony is admissible. The complainant's established wholesale price, if one exists, must necessarily be shown by evidence *aliunde* the written contract. It is as much open to the defendant to show the facts defining the phrase "the established wholesale price" as to the complainant. If the total of such evidence does in fact show an established price, then the contract is rendered definite. If the evidence shows that there is no such established wholesale price, then the contract would be such as not to warrant a decree in the cause which seeks by the indirect method of injunction to accomplish its specific performance. *New York Johnson Motor Co. v. Johnson Motor Co.*, 15 *Del. Ch.* 356, 138 *A.* 603.

The next question is whether the defendant may introduce evidence to the effect that the complainant knew or surmised that the defendant at the time she entered into the contract with the complainant, was under a contract to buy ice cream exclusively from Abbott's Dairies, Inc., a competitor of the

complainant, and knowing that fact induced the defendant to breach her contract with the Abbott people, which had over a year yet to run, and to enter into the contract with the complainant whereby she agreed to make her purchases exclusively from it.

The principle upon which the defendant relies in the offer of such testimony is embodied in the maxim that he who comes into equity must do so with clean hands. The cases are innumerable which recognize this maxim and which deny to complainants equitable relief because of an infraction of its spirit. It is not essential that the party in whose favor the rule of the maxim will operate must be one who is himself entitled to complain, for the rule is not one of defense and need not be pleaded. *Bell & Howell Co. v. Bliss*, (*C. C. A.*) 262 *F.* 131. It is a rule that lays restrictions upon complainants, and tells them that an appeal for relief to a court of conscience will not be honored by one who has himself been guilty of unconscionable conduct. It was in harmony with this view that the case of *Rentoul v. Sweeney*, 15 *Del. Ch.* 302, 137 *A.* 74, was decided holding that one who had conveyed land for the purpose of defrauding a creditor had no standing in equity to secure a reconveyance, a sort of case in which it is manifest that the maxim's application could in no sense be said to operate in response to an assertable complaint on the part of the defendant.

Of course the hands of the complainant must be rendered unclean by reason of some conduct connected with the matter in controversy, for it would be highly unjust to deny to a litigant all right to equitable relief because of generally bad conduct. Those matters that are *res inter alios acta* are not to be taken into account.

The foregoing are all of the general considerations that need to be referred to in the present connection. What is the result of their application to the facts of this case?

The complainant secured its contract with the defendant on June 8, 1926. At that time, it is sought to be shown, the defendant was under a contract with Abbott's Dairies, Inc., dated October 8, 1925, by the terms of which the defendant was obligated to buy exclusively the Abbott products until October 8,

1927, that the complainant to all intents and purposes knew this, and knowing it induced the defendant to breach that contract and enter into one with the complainant. If that be true, the defendant of course violated her duty to the Abbott company; and the complainant, by inducing her, participated in the wrong. Its conduct, if the proffered testimony be true, was unfair and without justification, so much so that had the Abbott company been seasonably advised it might have obtained injunctive relief against the complainant's interference. *Westinghouse Electric & Mfg. Co. v. Diamond State Fibre Co.* (*D. C.*) 268 *F.* 121. The defendant of course by her repudiation of the Abbott contract subjected herself to liability, and to the extent that the complainant's inducements led her into that position it assisted in exposing her to injury. In that sense it might be said that the complainant's wrongful alleged behavior did do an injury to the defendant. At all events, the contract, if the offered testimony be true, was obtained by the complainant in a manner that shows a distinct wrong done by it to another if not to the defendant. The subject in direct controversy here therefore shows itself to have emanated from a course of conduct on the complainant's part which, if proved, will not stand the test of good morals, and this court is asked to use its remedial powers as far as possible in giving to the complainant the benefit of a contract so obtained. If the Abbott company's contract were still running and it had countered on the complainant by persuading the defendant to repudiate her contract with the complainant and resume contractual relations with it, the maxim with which we are here dealing would deny to the complainant all relief in its attempt to force the defendant to abide by her contract with it. *Weegham, et al., v. Killefer, et al.,* (*D. C.*) 215 *F.* 168, affirmed *Ibid.* 289. The Abbott company is not however involved, because its contract of October 8, 1925, has now expired.

But the fact remains that the defendant continues to be liable to the Abbott company and that the complainant wrongfully induced her to incur that liability. Furthermore, the fact remains that the complainant's conduct, if the proffered testimony be true, shows the contract in suit to have been obtained by the complainant in a manner that was unfair and inequitable.

Accordingly I conclude that the proffered testimony should be received.

Order accordingly.

NOTE.—See also *post p*. 321