FREDERICK WALTER,
Defendant Below, Appellant,

*vs.*

MARION W. WALTER,
Plaintiff Below, Appellee.

*Supreme Court on Appeal, November 20, 1957.*

*Courtney H. Cummings, Jr.,* of Killoran & Van Brunt, Wilmington, for appellant.

*David B. Coxe, Jr.,* Wilmington, for appellee.

SOUTHERLAND, C. J., and WOLCOTT and BRAMHALL, JJ., sitting.

SOUTHERLAND, Chief Justice: The suit concerns the enforceability of certain provisions of a separation agreement entered into by the parties when they were man and wife.

The facts are these:

The parties were married in 1938. Three children were born of the marriage. Their married life became unhappy, and in October 1954 they separated. A formal agreement of separation was entered into in November, 1954. Each party was represented by counsel. The agreement embodies, among other things, (1) covenants to live separate and apart (2) provisions for the support of the wife and children, and for the custody of the children; and (3) provisions settling the respective property rights of the parties. The specific provisions relevant to this case will hereafter be set forth.

In July of 1955 the husband brought suit for divorce, charging adultery. A decree nisi was granted in July of 1956 and became final in October of that year. Thereafter, the Family Court took the custody of the youngest child from the wife.

The husband took the position that as of the date when the divorce should become final he would no longer be liable to make to the wife the support payments provided for in the agreement. Before the date of the final decree he so notified the wife. She then filed this suit to enforce the agreement. After the defendant answered plaintiff moved for summary judgment. The Chancellor overruled all of the defenses to the case and granted the motion. Defendant appeals.

The support provisions are found in paragraph 6 of the separation agreement. They provide in part:

"The Husband shall during the joint lives of the Husband and Wife, make the following payments:

"a. The sum of Two Hundred Seventy-Five Dollars ($275.00) a month for the support and maintenance of the Wife so long as she does not remarry. This payment shall be made in advance on the 30th day of each month commencing with October 30, 1954. Out of this sum the Wife shall provide for the care and maintenance of Leslie Gould [the youngest child] so long as she remains in the Wife's custody."

An increase in this sum under certain conditions is provided for, and also payments for the wife's surgical, hospital and nursing expenses.

Upon the admitted fact that the wife, after the separation of the parties, was guilty of adultery, the defendant bases several contentions.

1. It is urged that the separation agreement embodied a settlement on the wife "in lieu of dower", and that such a settlement is automatically forfeited under the applicable statutes and any liability of the husband under paragraph 6 is terminated.

The provisions of the agreement upon which this contention is based are (1) a covenant by the husband to bequeath to the wife one-third of his estate if she survives him and does not remarry and (2) a general release by each party of any right to share in the estate of the other. This "settlement", says the defendant, was forfeited under the statutes hereafter set forth, and the support provisions. as an integral part of the settlement, fall with it.

The two statutes relied upon are as follows:

12 *Del.C.* § 908 provides:

"If a wife willingly leaves her husband and goes with an adulterer, or willingly lives in adultery in a state of separation from her husband and not occasioned by his fault, in either case, unless her husband be reconciled to her and suffer her to dwell with him, or if she be convicted of wrongfully killing her husband, she shall forfeit her dower and all demands, as his widow, upon his real or personal estate, and any estate, charge, or benefit, settled upon her, or upon trust for her, in lieu of dower."

13 *Del.C.* § 1532 provides:

> "When the cause of divorce is the adultery of the wife, she shall forfeit any estate, charge or benefit settled upon her, or in trust for her use, in lieu of dower."

No question is raised as to whether these statutes are pleadable in defense of a suit in equity to enforce a separation agreement, or whether they are enforceable only in appropriate proceedings in the Orphans Court and Superior Court respectively. We assume, without deciding, that defendant is entitled to invoke their provisions to the extent that they apply to the case.

But we are of opinion that these statutes are wholly inapplicable here. The first statute derives from the *Code* of 1852, § 1748, and the second from the divorce act of 1907. 24 *Del.L. c.* 221, § 14. Both statutes speak of settlements "in lieu of dower."

The word "dower" means dower as it existed at common law—a right entitling the widow to have laid off to her by the Orphans Court a one-third interest for life in real property of which her husband was seised during the marriage. Act of 1816, 5 *Del.L.* p. 174; 12 *Del.C.* § 901. The word is not used vaguely to include any statutory rights of the widow, but in its common law sense. Cf. *In re Hartmann's Estate, Orph.Ct.1928,* 16 *Del.Ch.* 466, 141 *A.* 695.

There is no specific reference to "dower" in the agreement. No doubt the general release of all right to share in the husband's estate, except as reserved, comprehended a release of any dower right, inchoate as well as vested but this does not make the agreement a "settlement in lieu of dower" within the meaning of these forfeiture statutes. Here the release of dower was a minor incident in the course of a general settlement of property rights. Bearing in mind the background and narrow application of the statutes, we are of opinion that, so far as concerns contracts between husband and wife, they were intended to apply only to antenuptial or postnuptial settlements dealing primarily with common law dower and made and entered into in contemplation of the formation or continued existence of the marital relation. They do not, we think, have any application to an

agreement such as the one before us, which is a comprehensive agreement of separation looking to the cessation of cohabitation and the permanent settlement of the parties' property rights. These forfeiture statutes, which are penal in their nature, are directed to cases of destruction of the marriage relation occasioned by the infidelity of the wife, not to cases of separation resulting from mutual consent. Cf. *Rawlins v. Buttel*, 1 *Houst*. 224, in which dower was awarded to a widow guilty of adultery because the husband was primarily at fault in causing the wife to leave him.

Indeed, the injustice of attempting to apply these forfeiture statutes to a separation agreement of the kind here involved is manifest. The wife was not the sole recipient of benefits under the contract. She gave up a valuable property right—her undivided interest in certain real estate held by the parties as tenants by the entirety. Under paragraph 4 of the agreement that real estate is to be conveyed to the husband free of all rights of the wife. To accept defendant's contention would be to give him the benefits of the agreement without the burdens.

We are of opinion that the forfeiture statutes have no bearing on the validity of the agreement in suit.

This conclusion follows whether the agreement be "integrated", i.e., entire, or whether it be severable—a point which is discussed at length on defendant's brief but which we think immaterial.

■ 2. Defendant builds a second argument upon the finding of adultery. He argues that the support provisions of the agreement simply determine the amount of the husband's monetary obligation to support the wife; that the sole consideration for such payments is his legal obligation to support her; that any such obligation immediately ceases upon proof of the wife's adultery; and that there has accordingly been a failure of consideration in respect of these support payments, and the defendant's liability therefor is at an end. Authorities in other jurisdictions are cited in support of this argument. The Chancellor rejected it, relying upon the decision of the Court of Chancery in *Heinsohn v. Chandler*, 23 *Del.Ch*. 114, 2 *A.2d* 120, 123. In that case, as here, a separation agreement had been entered into

while the parties were man and wife. It provided for payments by the husband for the support of the wife and children. It contained no provision for its termination upon divorce. Subsequently the parties were divorced. The husband, defending an action to enforce the agreement, argued failure of consideration because no legal duty existed to support a divorced wife. Chancellor Wolcott said:

> "The argument is not acceptable. It overlooks the fact that a party may contract to do things which prior to his agreement no legal duty rested on him to do. Contract obligations do not need to rest on some prior general legal duty for their sanction.

> "In so far, then, as the defendant attempts to justify the reduction of his weekly payments from forty-five dollars to twenty-five dollars by the divorce which had been granted, his position is not tenable. If a husband enters into a separation agreement obligating him to provide money payments to his wife, if he intends that his payments should cease upon her subsequent divorce or remarriage, it would be the part of precaution on his part to have the agreement say so."

We are in accord with this decision, and think that the Chancellor was correct in following it. The agreement here involved provides for termination of the wife's support payments if she remarries, but does not provide for such termination if the parties are divorced. Hence the Heinsohn case is applicable. It disposes of the second argument based on the plaintiff's adultery.

3. Defendant's brief also appears to advance the broader contention that, quite aside from any finding of adultery by the wife, the agreement was terminated by the decree of divorce. This contention is based on (1) certain provisions of the agreement that appear to contemplate the continuance of the former marital status, e.g., a provision for filing joint income tax returns and (2) the absence of any clause providing that the agreement shall not be affected by divorce.

We are under the impression that this contention was abandoned at the argument; at all events, we are satisfied that there is nothing of substance in it. In the first place, the agreement con-

tains several references to the contingency of the wife's remarriage, and therefore contemplates the possibility of divorce. See, for example, the excerpt from paragraph 6 above quoted. In the second place (and more important) the contention is contrary to the holding of the Heinsohn case, quoted above. The language of the Chancellor in that case is directly in point. If parties to a separation agreement intend that it shall be terminated by divorce they should say so. The courts cannot make such a contract for them.

■■ 4. Defendant bases still another contention upon the fact of plaintiff's adultery. He argues that the separation agreement should be construed to contain an implied covenant that his obligation to support the wife is conditioned upon her remaining chaste. Various authorities from other jurisdictions are also cited and discussed. There is no Delaware case in point. The great weight of authority, both in England and in this country, holds that the wife's subsequent adultery does not prevent the enforcement of a separation agreement. Lindey, *Separation Agreements and Ante-Nuptial Contracts,* pp. 445-446; 6 *Williston, Contracts,* § 1742; *Whittle v. Schlemm,* 94 *N.J.L.* 112, 109 *A.* 305, 8 *A.L.R.* 1447; annotation, 8 *A.L.R.* 1452. The Chancellor followed the established rule and we think he was right. If the husband does not have the agreement specifically make the subsequent misconduct of the wife a ground for terminating his liability, the courts will not imply the condition for him.

■■ 5. Finally, defendant attempts to invoke the doctrine of unclean hands. This is clearly inapplicable. To bar relief, plaintiff's hands must be rendered unclean by reason of some conduct relating directly to the matter in controversy. As we have already held, the subsequent misconduct of the wife is irrelevant to the enforcement of the agreement. Relief cannot be denied to plaintiff because of misconduct not affecting the agreement. This is not to sanction plaintiff's wrongdoing; it is simply to say that a court of equity does not refuse equitable relief because of generally bad conduct. *Sharpless-Hendler Ice Cream Co. v. Davis,* 17 *Del.Ch.* 161, 151 *A.* 261.

We are in accord with the opinion of the court below, and the judgment appealed from is affirmed.