### WILLIAM C. PIERSON

*vs.*

### SARAH Y. PIERSON, Widow and Administratrix of GEORGE W. PIERSON, Deceased, *et al.*

New Castle, Sept. T. 1874.

*Conveyance by debtor; deed absolute on its face; establishment of trust under, by parol.*

1. Where there is a controversy between a debtor and his creditor as to the amount of the indebtedness, and the debtor makes a conveyance of land to a third party, with the understanding that the grantee shall ascertain, adjust, or settle such indebtedness, and raise, by sale of the conveyed land or otherwise upon credit of the land, a sufficient amount to pay the same, — such conveyance is not of itself fraudulent; and unless creditors were in fact thereby hindered, delayed, or defrauded, the purpose to hinder, delay, or defraud will not be presumed.

2. Equity will refuse relief to one seeking to have a deed executed by him, absolute on its face, declared subject to a trust to reconvey to

him, where he shows that such deed was made for a purpose con-
demned by equity, at, *e. g.*, to hinder, delay, or defraud creditors,—
although the answer of the defendant may not have set up such
defense.

3. A trust of lands, tenements, or hereditaments may, in this State (where
the Statute of Frauds on the subject is not in force), be manifested
and proved by parol.

4. If the parties to a deed absolute on its face actually intended a trust
in favor of the grantor, equity will, in order to prevent fraud,
recognize and enforce the trust.

BILL TO COMPEL THE RECONVEYANCE OF LAND.—The bill
of complaint in this case is filed to compel the reconveyance
by the defendant to complainant of a certain tract of land
situate in Mill Creek Hundred, New Castle County, contain-
ing about 30 acres, which the complainant had theretofore
conveyed to the defendant upon certain trusts mentioned in
the bill of complaint. The complainant states that he was
the owner of this tract of land, together with 16 acres more,
adjoining thereto, previous to April 9, 1850, when he con-
veyed the same to his son George W. Pierson in fee simple;
that the consideration named in said deed was $2,350, but
that in fact no part of said sum was ever paid by the said
George, or any other person for him. The bill, however,
admits that the said George executed and delivered his bond
to the complainant for the said sum, the possession of which
bond was retained by the complainant for a number of years,
when the said George took possession of it with the knowledge
and the consent of the complainant.

The purpose of the conveyance is expressed in the bill of
complaint as follows: "That on or about the said 9th day of
April, A. D. 1850, your orator became indebted to one William
Bracken, and also to the father of your orator, Thomas Pierson,
but was disposed to contest the said claims, and insist upon
certain just and proper allowances being made to him; which
said allowances were not, at that time, acceded to by the said
Bracken and Thomas Pierson. And your orator at that time,
in order to prevent unjust and ruinous exaction and sale of
his said real estate, and not for the purpose of delay, but only

for the purpose of enabling him the better to set up his lawful and just defenses to the said claims, and insist upon the recognition of his rights by the said Bracken and Pierson, conveyed the said land as aforesaid."

The bill also states that it was well understood between the complainant and his said son George, that so soon as the claims of the said Bracken and the said Thomas Pierson were settled and fully discharged, the said land was at once to be reconveyed to the complainant by the said George.

The statement of the complainant in reference to the time of his becoming indebted to William Bracken, and to his father, Thomas Pierson, is inaccurate. It appears from the record that his indebtedness to his father, in the sum of $300, is evidenced by the judgment entered July 5, 1846, bearing interest from April 5, 1843.

The record of the superior court also shows that William Bracken recovered a judgment against William C. Pierson and Thomas Pierson, by confession, for $250, on the 25th day of April, 1850, with interest from September 20, 1845, at which latter date it is reasonable to suppose that the indebtedness accrued. These are the two judgments mentioned in the bill, in respect to which the complainant alleges he claimed certain just allowances.

There appears to have been another judgment in favor of Bracken against Frederick T. Pierson and William C. Pierson for $200, with interest from January 22, 1846.

The five children of George W. Pierson, the original defendant, who is now dead, are infants, and by their guardian submit their interests in this cause to the care and protection of the court.

Sarah Y. Pierson, the widow and other defendant, states that she believes that the complainant was possessed of said land, and conveyed the same to George W. Pierson, as stated in said bill, but that she does not believe that the plaintiff conveyed the land in the manner set forth in the bill. She believes the conveyance was made to said George to enable the plaintiff thereby to raise money to discharge his indebted-

ness subsisting at that time, but does not believe that it was. made for the purposes only stated in the bill. She believes that the plaintiff, since the date of such conveyance, has resided in the dwelling-house and occupied the out-houses. and buildings and grounds thereto belonging, but does not believe that the said George, since the conveyance of said farm or tract of land, acknowledged the same to be the property of the plaintiff, but states that the said George declared the said farm belonged to him.

She states she believes that George W. Pierson did convey the said 16 acres to Thomas Pierson, but submits that the plaintiff was not indebted to his father, Thomas Pierson, nor William Bracken, at the time of their respective deaths, and denies that the proceeds of the sale were applied in the manner stated in the bill. She admits that George kept a daybook or journal in which certain entries were made of goods and property received by him from the plaintiff, and of goods, properties, and moneys delivered and paid by said George to plaintiff, and that such commenced April 9, 1860, and ended in March, 1870.

She states that she does not believe that said George recognized the plaintiff as the true and lawful owner of said farm, and expressed himself ready, to the said Thomas Pierson, to convey the residue to the said plaintiff.

She submits that the judgment of William Bracken against the plaintiff, and his father Thomas Pierson, and Frederick T. Pierson, were paid after the conveyance by the plaintiff to George W. Pierson, and also that the latter conveyance was made to enable the plaintiff to pay and satisfy his indebtedness subsisting at the time of said sale; that George W. Pierson, for more than twenty-one years, was seised and possessed of said tract of land, except the said 16 acres, and that, so far as she is informed and believes, the said George at all times during said period treated said lands as his own, and by himself or his agents cultivated the same, and gathered the crops produced thereon ; and that at no time, to her knowledge, did the complainant claim said property, or a conveyance thereof to himself.

No testimony having been taken upon behalf of the defendants, the case was considered on the bill and answers, and the depositions taken on behalf of the complainant.

Upon the bill, answer, and proofs in the cause, the solicitors for the complainant maintained that a trust was established, and that the conveyance of the land by the father to the son, although absolute on its face, and purporting to be for a valuable consideration, evidenced by the execution and delivery of a bond for the amount stated in the deed, was not in fact intended by the parties to the deed to be absolute and for the purpose of vesting title in the son to the exclusion of its trust interest in the father. They maintained that the proofs in the cause evidence such a trust in behalf of the complainant which a court of equity, under the circumstances in this case, will enforce.

The solicitor for the defendants insists that the bill, upon its face, shows that the conveyance by the complainant was to hinder, defraud, and delay creditors; and that a reconveyance cannot be awarded, in view of the Statute of Frauds in respect to fraudulent conveyance of lands.

*T. F. Bayard* and *Henry Pepper*, for the complainant:

Where the grantor continues in possession of the property, and to exercise acts of ownership over it; and more especially if the grantee recognize him as the owner, or acquiesce for a long period in being deprived of the benefits conferred on him by the deed,— all these facts will tend materially to establish the presumption that a trust was intended. Hill, Tr. p. 108. See also Story, Eq. Jur. § 1197.

Equity will enforce specific performance of a contract within the Statute of Frauds, when the parol agreement has been partly carried into execution. Story, Eq. Jur. § 759. See also Hill, Tr. p. 111; *Harvey* v. *Pennypacker*, 4 Del. Ch. 445.

The trustee's entries in his own handwriting in a book kept by him; the bond for the purchase price, which he took back into his own possession upon the sale of the 16 acres;

and the deed executed by him to Thomas Preston for the 16 acres,— were declarations in writing of the trust. See Hill, p. 62; *Leman* v. *Whitley*, 4 Russ. 425; *Cripps* v. *Jee*, 4 Bro. Ch. 475; *Prevost* v. *Gratz*, 1 Pet. C. Ct. 364.

A party who depends upon the ground of fraud in a transaction common to himself and another must not merely hint at fraud, but " he must say so in plain terms, and must clearly put forward his own scoundrelism if he means to reap the benefit of it." *Haigh* v. *Kaye*, L. R. 7 Ch. App. 473.

In this case no law or rule of public policy was in any way violated by the act of the complainant or his trustee; no creditor was delayed or hindered. But even where statutes and rules of public policy were intended to be violated, yet, if the purpose was not accomplished, equity will lend its aid to execute the trust. *Platamone* v. *Staple*, Cooper, Ch. 250; *Haigh* v. *Kaye*, *supra*; *Symes* v. *Hughes*, L. R. 9 Eq. Cas. 475; *Davies* v. *Otty*, 35 Beav. 208.

*Benjamin Nields*, for the defendants:

A fraudulent grantor cannot be relieved in equity against his own fraud. *Jackson* v. *Dutton*, 3 Harrington, 98; *Eyre* v. *Eyre*, 4 C. E. Green, 42; *Mulin* v. *Garnsey*, 16 Johns. 189; *Osborne* v. *Moss*, 7 Johns. 161; *Tantum* v. *Miller*, 3 Stockt. 552; 2 Washb. 652.

Where the direct and inevitable consequence of an act is to delay, hinder, or defraud creditors, the presumption at once conclusively arises that such illegal object furnished one of the motives for doing it, and it is thus upon this ground held to be fraudulent. Bump, Fr. Conv. pp. 70–72.

The defendants were not required to plead the Statute of Frauds, for the reason that the plaintiff states in his bill that the conveyance was made to George W. Pierson to prevent William Bracken and Thomas Pierson from recovering their claims against him, and he thereby brings himself by his own statement within the statute. " In setting up a defense under a public statute, it is not necessary that the pleader should set forth the statute in his plea, or that he should allege the

existence of a statute .which the court is bound to notice judicially. 4 Paige, 177.

*John C. Patterson*, also for defendants:

The English Statute of Frauds, §§ 7, 8, and 9 (relating to lands), have never been adopted into our law. The only section relating to lands so adopted is § 4 of that statute. Sections 7, 8, and 9 relate to declarations or creation grants, assignments, or extinguishment of trusts or confidences. And most of the English cases have arisen under them, and are in so far not applicable to cases arising under our statute.

For different kinds of trusts by implication or construction of law, see Hill, Tr. Am. ed. 1846, pp. 91, 144.

The conveyance in question does not come under the first, second (see 1 Paige, 494; 6 Barb. 98; 3 Clinton, Dig. 329), or third classes of resulting trusts. It is, on its face and by the proof, for a valuable consideration; is in terms a conveyance of all the grantor's rights in law or equity; and embraces a special warranty. If grantee's alleged declarations be admitted, his bond was given for the purchase money, and held by grantor for over ten years and then given up. The valuable consideration annuls the idea of a trust, makes the transaction a purchase; and the subsequent giving up of the bond cannot operate to change what was a sale of the property, into a trust.

The resulting trust must attach, if at all, by virtue of the transaction itself. It cannot be raised from subsequent matter *ex post facto*. Hill, Tr. 97. If a person in actual possession of property make an actual gift or transfer of it to another, as a general rule the presumption of a resulting trust will not arise. Hill, Tr. 93.

There is a general rule to which there is no exception; it is this: The law never implies, the court never presumes, a trust, but in case of absolute necessity. *Cook* v. *Fountain*, 3 Swanst. 585, cited in Hill, Tr. p. 144, note 1.

Where a person, being a stranger in blood to the donor,— and *a fortiori* if connected with him by blood,—is in possession of an estate under a voluntary conveyance duly executed,

the mere fact of his being a volunteer will not of itself create any presumption that he is a trustee for the grantor; and he need not bring proof to keep his estate, but plaintiff must bring proofs to take it from him. Hill, Tr. 107, 108; 1 Ves. 511; 5 Sim. 35; 2 Ves. 10; 2 Mylne & K. 262, 273; 3 Swanst. 590, 591.

The legal estate may in some cases be held in trust as between strangers in blood, where it will not be as between privies in blood. Hill, Tr. 94, 97, 101, 103.

Where the owner of an estate conveys it to another absolutely, for a valuable consideration, which, however, is not paid, but no case of fraud or mistake is made, the seller cannot by parol evidence alone establish a trust for himself; and no resulting trust arises from such a transaction. Hill, Tr. 96; 4 Russ. 423.

If a person in whose name conveyance of property is taken be one for whom the party paying the purchase money is under a natural or moral obligation to provide, no equitable presumption or trust arises from the fact of the payment of the money, but the transaction will be regarded, *prima facie,* as an advancement for the benefit of the nominee. In that case it will be for the party seeking to establish the trust to displace, by sufficient evidence, the presumption that exists in favor of the legal title. Hill, Tr. 97. Where voluntary conveyance is without declaration of trust, parol declarations cannot be used in evidence to set up a trust; for in these cases there exists no resulting trust, and the admission of such evidence would be for the purpose of contradicting the written instrument, and establishing a trust by parol, in the very teeth of the Statute of Frauds. Hill, Tr. 107; 1 Atk. 386; 3 Bro. C. C. 576. When the trust arises on the face of the deed, it must be very clear; and, however clear it may be, it seems doubtful whether parol evidence is admissible against the answer of the trustee denying the trust; and in cases of this nature the claimant, in opposition to the legal title, should not delay asserting his right, as a stale claim would meet little attention. *Lloyd* v. *Spillet,* 2 Atk. 150, Sanders' note. Even

the confession of a resulting trust by the nominal purchaser, to countervail a declaration in writing, and create a trust for the party advancing the money, cannot be established by a third person, but must be made under a judicial examination upon oath, or by the party's own answer in equity; for during the life of the nominal purchaser no proof can be received of his parol confession as not being the best existing evidence, and after his death it is mere parol evidence, contradicting the deed, and not of strength to raise a resulting trust. Roberts, Fr. 99. See *Flint* v. *Sheldon*, 13 Mass. 443; *Boyd* v. *Stone*, 11 Mass. 342; Browne, Fr. ed. 1863, § 445 *a*.

A declared trust, however, cannot be set up in regard to lands by parol, against an absolute deed importing a valuable consideration on its face. 14 Ind. 62; 38 N. H. 382; 26 Conn. 368; 20 N. Y. 39; Browne, Fr. ed. 1863, § 445 *a*, note 3.

Where no deception is practiced in obtaining the title, but a mere verbal promise to make a certain disposition of land already acquired, the promisor will not be held as a trustee. Browne, Fr. § 445 *a*.

Where any valuable consideration is expressed in a deed, the court will not look narrowly into the consideration; and especially between father and son the slightest consideration will be sufficient to support a conveyance, even against creditors, and *a fortiori* will suffice to prevent a resulting trust. Hill, Tr. 112; 2 Ves. Jr. 410; 2 Sugd. Vend. & P. 262; 3 Sugd. Vend. & P. ed. 1843, 174. Where the conveyance is expressed to be for a valuable consideration, parol evidence cannot be received for showing that the purchaser was intended to be merely a trustee for the vendor. Hill, Tr. 112; 4 Russ. 423. Parol evidence will be rejected when the legal title, which it is the object to impugn, is founded upon an express gift or limitation to the donee, unaffected by any adverse presumption. Hill, Tr. 125. Parol evidence cannot be received to contradict an instrument in writing, as between parties and privies. 10 Johns. 229; 1 Sugd. Vend. & P. 271; *Scotten* v. *Brown*, 4 Harrington, 324.

If the son suffer the father, who purchased in his name,

to receive the rents and profits, etc., this will not contradict the nature of things, and turn a presumptive advancement into a trust. Hill, Tr. 104, 105; 1 Atk. 386; 2 Beav. 447; 2 Vern. 19. For instances where voluntary settlements were established even though the deed remained in the grantor's possession and the profits of the estate were received by him up to the time of his death, see Hill, Tr. 111; Prec. Ch. 211; 2 Vern. 473; Dan. 143; 2 Jac. & W. 391.

No evidence can be admitted for the purpose of engrafting a trust upon an instrument which purports to be an absolute gift, excepting in cases of fraud and mistake. Hill, Tr. 61, and cases cited in note *o*. Nor will a court of equity interfere, even against a volunteer, unless in cases of fraud. Madd. Ch. 414, 415. As to the nature of such frauds, see Browne, Fr. §§ 94–96, 437, 439; Hill, Tr. 144, 170. But in no case will the grantee be deemed a trustee if he used no fraud or deceit in getting his title, although he verbally promised to hold the land for the grantor. Browne, Fr. § 95, and cases cited in note 1. See also *Steere* v. *Steere*, 5 Johns. Ch. 1.

Where a trust is sought to be enforced on the ground of fraud, the fraud should be distinctly alleged and clearly proved. Browne, Fr. § 96, and note 3.

Where there is no pretense of fraud, or misapprehension of the parties with respect to the nature of the instrument, parol evidence is inadmissible to prove the trust. Browne, Fr. § 111; 4 Russ. 423.

Any writing which is to furnish the evidence of the trust must be signed by the party legally entitled to declare it. Eng. Stat. Fr. § 7; Hill, Tr. 61; Browne, Fr. §§ 97, 100.

A fraudulent grantor cannot be relieved in equity against his own fraud; neither can his heirs at law, who stand in no better condition. 3 Harrington, 18, and cases cited; 2 Harrington, 128. A fraudulent conveyance made with the view of defeating the claim of creditors is altogether void by the statute of Elizabeth. Such a deed, therefore, can confer no legal interest on which a trust can be fastened by a court of equity. Hill, Tr. 163. The fraudulent transaction will be

binding on the guilty party himself, for no person is allowed to take advantage of his own fraud. Hill, Tr..149. The principle is that it is the guilt of both parties, and neither can invoke the action of a court of equity in its aid. 1 Fonbl. Eq. 139, 140, note.

Besides, more than twenty-one years elapsed after said conveyance, and the grantee dies, and new parties arise in interest, before complainant takes any steps to have what he calls the trust carried out. Equity will not encourage stale claims; and long acquiescence and lapse of time are a bar to a bill for an account and equitable relief. Story, Eq. Pl. § 757; 4 Harrington, 270; 3 Bro. Ch. 269, note *b*, and cases cited; *Lloyd* v. *Spillet*, 2 Atk. 150, Sanders' note.

As to the infant defendants, they are entitled to every benefit which can be taken by exception to the bill, without expressly making the exception. Story, Eq. Pl. § 871; 1 Dan. Ch. p. 215; 3 Johns. Ch. 367, 368.

But if the court shall be of opinion that the said conveyance was taken and is held subject to a trust, then the defendants claim that a trust of said lands in their father, the said George W. Pierson, for the life of his father, the said William C. Pierson, or perhaps for the benefit of his father and mother, and the longest liver of them, for their joint lives and that of their survivor, will satisfy the object of the trust and the evidence in the case; and that, such being the case, when a trust estate is created by implication, no greater estate will be implied than is necessary to satisfy the object of the trust. *Fox* v. *Phelps*, 20 Wend. 441, citing *Doe* v. *Simpson*, 5 East, 162; *Doe* v. *Needs*, 2 Mees. & W. 129; Hill, Tr. 112, citing 3 Swanst. 585. Trustees take that quantity of interest only which the purposes of the trust require and the instrument creating it permits. 4 Kent, Com. 310, note *a*.

No relief can be granted complainant on the score that the bond referred to in the bill may have been to secure the execution of the trusts; for the nature of the bond does not sufficiently appear to found any relief thereupon, and no relief can be granted as on a case not stated by the bill. *Jones*

v. *Bush*, 4 Harrington, 1; *Cloud* v. *Whiteman*, 2 Harrington, 401.

THE CHANCELLOR.—I shall not state the arguments of counsel in detail, in support of their respective positions. Whatever of difficulty there is in this case is not in a conflict of principles of equity, but arises from the application of those principles to the facts upon which it mainly depends. I have been somewhat embarrassed by the peculiar statement of the complainant's cause by himself. Although the purpose of delaying his creditors is expressly denied, his statements in respect to the reasons of the conveyance verge closely on a confession that delay was his object.

The proofs, however,—connected as they are with the averment in the bill that the agreement between the father and the son was that, as soon as the claims were adjusted and paid, the son should reconvey to the father,—seem inconsistent with any fixed purpose of the father to hinder, delay, or defraud his creditors.

The judgment of the complainant's father had been in existence several years before the conveyance, and its lien could not be affected, nor its collection delayed, by such conveyance; and the judgment of Bracken against said complainant and his surety was paid within a few days after it was recovered.

No executions were ever issued upon these judgments. It is to be observed, also, that the answer of the only defendant who is personally capable of making an answer does not insist that the conveyance was made for the purpose of hindering, delaying, or defrauding creditors, but states the belief that the conveyance was made by the father to the son, to enable the father to raise money, without stating any knowledge or belief of the payment of any money by the son to the father as a consideration for the conveyance.

The infant defendants being incapable of personally answering the complaint, I would, if in my judgment the facts proved justified me in doing so, recognize this defense

in their behalf, without such defense being made by way of answer.

In fact, if the bill and the proofs of the complainant, or either of them, show that the purpose of the conveyance was to hinder, delay, or defraud creditors, it is not necessary for the defendants to declare such to be the fact. The bill of the complainant must not disclose the existence of such intention, and his proofs must not establish the existence of such an intention.

A plaintiff comes into a court of equity seeking equity, and he must not show that he has done or purposed to do that which equity will condemn.

Where there is a controversy between the debtor and his creditor as to the amount of the indebtedness, and the debtor makes a conveyance to a third party, with the understanding that such party shall ascertain, adjust, or settle such indebtedness, and raise by sale of such land, or otherwise upon credit of the land, a sufficient amount to pay and satisfy the same,— such conveyance, I conceive, would not be fraudulent. And unless creditors were in fact thereby hindered, delayed, or defrauded, the purpose to hinder, delay, or defraud ought not to be presumed.

The material question in this case is, Did the complainant, by making the conveyance to his son, intend to hinder, delay, or defraud either his father, Thomas Pierson, William Bracken, or other creditors? If he did defraud or intend to defraud them or any of them, and that fact or intention be satisfactorily disclosed by the bill, or the proofs made by the complainant's own witnesses, then he has no standing in a court of equity, and is entitled to no relief, although the answer of the defendants may not set up such a defense.

The solicitors for the defendants insist in their argument, among other defenses, upon the benefit of the Statute of Frauds. By Stat. 29 Car. II. chap. 3, § 7, it is declared that " all declarations or creations of trusts or confidences of any lands, tenements, or hereditaments shall be manifested and proved by some writing signed by the party who is by law

enabled to declare such trusts, or by his last will in writing, or else they shall be utterly void and of none effect."

This section is not in force in this State, and is no part of our Statute of Frauds. In this State a trust or confidence of lands, tenements, or hereditaments may be manifested and proved by parol, and therefore the objection taken in this respect in this cause fails.

It is true, as contended by the solicitor for the defendants, that a resulting trust must attach, if at all, by virtue of the transaction itself, and that it cannot be raised from subsequent matter *ex post facto;* and that if a person in the actual possession of property make an actual gift or a transfer of it to another for that other's benefit, as a general rule the presumption of a resulting trust will not arise.

It is also true, as a general rule, that the law never implies, the court never presumes, a trust. It is also true, where the owner of an estate conveys it to another for a valuable consideration, as the price for the title to the estate, but which in fact is not paid, the nonpayment of the consideration price will not change a *bona fide* sale into a trust. But, to prevent a fraud, a court of equity will regard a conveyance purporting to be absolute on its face as not in fact an absolute conveyance, if the proofs in the cause show that it was not intended to be absolute.

A court of equity will regard what purports to be an absolute conveyance as a mortgage, in order to prevent the commission of frauds, if the proofs taken according to the principles of evidence justify them in so regarding the conveyance. If a trust was in fact intended by the grantor and the grantee in favor of the grantor, although the conveyance purports to be absolute on its face, a court of equity, to prevent fraud, will recognize and enforce the trust, and will regard the delivery of the deed as a delivery for the purposes intended, and not for a purpose not intended.

In fact there is no instrument of writing in form so strong or technical, if pleaded or offered in evidence, which would work a fraud contrary to the actual intentions of the parties,

that would be allowed to so operate by the sanction of a court of equity.

The prevention of fraud, more than anything else, is the great prerogative of a court of equity.

While I hold that a trust may be manifested and proved in this State by parol, I would not consider the loose declarations of a grantee in a deed, that he held for the benefit or in trust for another, sufficient to oust him of his estate.

Yet where his uniform declarations are supported by the continuous possession of the grantor; his occupying and using the premises as his own; receiving the rents therefor; paying interest, as in this case, on money borrowed on the faith of the land conveyed; contracting for the sale of a portion of the land, and the proceeds of sale being applied to the payment of liens against the land, and in payment of debts which had been incurred to raise money for the payment of pre-existing liens upon the land; in short, where every act in respect to the land appears to have been done by or for the grantor, and not the grantee,— all these acts, taken in connection with the declarations of the grantee as to how he holds, and for whose benefit he holds, furnish evidence satisfactory that there must have been an original understanding or agreement between the parties that the conveyance was for the benefit of the grantor, and not the grantee.

Believing that no fraud was done, or originally intended to be done, by either William C. Pierson or George W. Pierson, and that no creditor of the former has been defrauded, hindered, or delayed by the conveyance of the former to the latter, and that no principle of public policy forbids a decree for reconveyance; and believing that a fraud would result, contrary to the original intention of the father and the son, if the relief is not afforded as prayed,— I direct a decree to be drawn for a conveyance of the lands which were conveyed by the complainant to George W. Pierson, less that portion of said lands which was conveyed by George W. Pierson to Thomas Pierson, by Sarah Y. Pierson, upon the payment to

her, as the administratrix of George W. Pierson, by the complainant, of the amount of the book account of George W. Pierson against the complainant remaining unpaid, which was in evidence at the hearing, with interest thereon from the death of the said George W. Pierson; and that the other defendants respectively make a deed to the complainant, or to his heirs or assigns, for said land, at the expiration of six months from the time at which they shall respectively arrive at the age of twenty-one years.