Kate L. Rentoul,

*vs.*

Annie C. Sweeney.

*New Castle, March 25, 1927.*

*William S. Hilles*, and *E. A. Howell*, of Chester, Pa., for complainant.

*Julian C. Walker*, and *J. Eugene Walker*, of Media, Pa., for Pefendant.

THE CHANCELLOR. The defense made to this bill is twofold. First, it is contended that the evidence shows that the defendant in taking the reconveyance from her sister, the complainant, of the twelve-acre tract and in her subsequent dealings with that property and its proceeds, acted solely in her own absolute right as a purchaser and owner and in no sense as a trustee or agent for her sister. But, second, if it be granted that the defendant was not an absolute purchaser from her sister, yet the latter is not entitled to the relief sought for the reason that on her own showing the conveyance by her to the complainant was for the purpose of hindering or

delaying her creditors, was therefore fraudulent, and, such being the case, a court of equity will turn a deaf ear to her appeal for its aid on the maxim that he who comes into equity must come with clean hands.

First, then, does the proof show that the defendant in receiving back the title to the twelve acres did so, not as a purchaser, but as trustee for her sister? If she was such trustee, the trust was an undisclosed one, for the deed to her was absolute on its face. The trust, if any, rests entirely in parol. That circumstance, however, is of no consequence if the parol evidence sufficiently demonstrates the existence of the trust, for it is well settled in this State that a trust in land may be established by parol evidence. *Hall v. Livingston*, 3 *Del. Ch.* 348; *Harvey v. Pennypacker*, 4 *Del. Ch.* 445; *Pierson v. Pierson*, 5 *Del. Ch.* 11.

The only question on this branch of the case therefore is, whether the evidence is sufficiently strong to establish satisfactorily to the court the existence of the trust. In answering that question it is important to bear in mind the degree of persuasion which is exacted of the evidence before the court is warranted in saying that it supplies sufficient proof of the alleged trust. Upon this point, Chancellor Bates in *Hall v. Livingston*, *supra*, observed that the proof must be such as, "giving to the grantee the benefit of a strong presumption in his favor, arising from the absolute form of the deed, * * * leaves no doubt of the existence and exact terms of the trust alleged." In the later case of *Harvey v. Pennypacker*, *supra*, he further stated that all authorities agree that the establishment of resulting trusts, not only without deed, but in direct opposition to the written title, is "of dangerous tendency;" and that "by general consent, while no restrictions are placed upon the reception of any kind of parol testimony to establish a resulting trust, it is held that the measure of such evidence required to overcome the presumption in favor of the legal owner must be 'clear, full and satisfactory.'" In *Pierson v. Pierson*, 5 *Del. Ch.* 11, the Chancellor declined to "consider the loose declarations of a grantee in a deed, that he held for the benefit or in trust for another, sufficient to oust him of his estate."

These and similar expressions, which at times are even more forceful, may be found in judicial utterances elsewhere, which em-

phasize the weight of the burden that rests upon him who seeks to destroy the natural purport of his own deliberately chosen language or the legal effect of his own voluntary act.

Having in mind the skepticism with which equity views the efforts of an individual to transform what appears to be a plain and unequivocal act into something whose nature is different from its deliberately chosen appearance, I now turn to the evidence in this cause to see if the complainant has clearly, fully and satisfactorily and without doubt established that her conveyance, absolute in point of form, was in fact upon the trust and confidence claimed for it.

This evidence consists principally of testimony by the complainant and her husband that when the reconveyance was made it was expressly agreed between her and the defendant that the title was to be held for the complainant. Against this testimony is the positive denial of the defendant. In support of the irreconcilably conflicting statements of the parties, witnesses have been produced by each. After a careful consideration of the evidence I am constrained to say that the presumption in favor of the absolute nature of the deed which its face carries has not been so clearly and satisfactorily overcome as to warrant me in saying that the matter is free from doubt in my mind. The complainant is corroborated by the testimony of a reputable attorney who drew the deed of September 15, 1909. That is not the deed, however, to which the alleged trust is claimed to have attached. It was the deed by which the defendant conveyed to the complainant the twelve acres for a named consideration of forty-five hundred dollars, and the pertinency of the attorney's corroborating testimony consists only in this, viz., that the complainant paid something more than twenty-five hundred dollars for the land, namely, two thousand dollars more, the amount of the interest which the complainant contends her sister was giving to her out of the mother's estate. If this be granted, still it leaves undecided the question of whether the later deed of reconveyance dated June 27, 1912, which was drawn by a justice of the peace, was an absolute one in point of fact as well as of form. It is to this deed that the alleged trust, if ever created, was attached, and from it descended, so to speak, upon a portion of the purchase money received by the defendant

from Mr. duPont and in turn upon the Pennsylvania farm, stock and utensils bought by her with said portion of the purchase money. As to the transaction of reconveyance in 1912 and its train of subsequent circumstances, the evidence by which the alleged trust is sought to be shown consists almost entirely of the testimony of the complainant and her husband, which is denied by the defendant, of admissions which the defendant is said to have made and of certain acts and conduct of the parties which are said to throw light on the question of who was regarded by them as the beneficial owner. Now as to these features of the testimony, I do not feel it necessary to burden this opinion with a detailed discussion. Such discussion would be long and tedious, for it would have to deal with a great variety of petty details. The following general observations are all that I feel called upon to make: As to the admissions which are produced against the defendant, they were entirely oral and if made may I think be denominated such "loose declarations" as not to be accorded a controlling influence, especially in view of the fact that the complainant herself is shown to have made admissions against the alleged trust relationship which in point of preponderance outweigh those of the defendant in its support. In other words, if the defendant did on occasions make declarations damaging to herself, the defendant has more than obviated their effect by making stronger admissions in the defendant's favor. This case illustrates about as well as a case can the danger of erecting a parol trust on oral declarations, a danger to which Chancellor Bates in *Hall v. Livingston, supra,* adverted and to avoid which some courts have gone so far as to say that never will a trust based alone on parol declarations be recognized, however numerous or strong such declarations may be. Declarations of this character may be quite liable to fraud or mistake and should be cautiously received; though if they are fortified by a test with collateral circumstances they may "become proof upon the conscience of the court." *Hall v. Livingston, supra.*

So much for the declarations. As to the testimony of the complainant and her husband to the effect that the complainant and her sister expressly agreed at the time of the 1912 reconveyance, at the time of the defendant's sale to Mr. duPont and at the time of the purchase by the defendant of the Pennsylvania farm, that all

these transactions were, to the extent of the complainant's original interest in the twelve acres, upon the trust claimed by the bill, it is sufficient to say that the defendant's testimony is as positive to the contrary. These sisters are in hopeless conflict upon the facts. If their mutually irreconcilable statements are the result of an honest though mistaken understanding of the transactions in which they were engaged, then it is apparent that there is strong room to believe that the alleged trust was far from being clear and explicit in its terms and therefore such as to suggest that the court should not venture to discover certainty in the confusion. I regret, however, to have to say that the conflict of statements between them appears not to be the result of an honest misunderstanding. If the case rested solely on the two opposed statements of the interested parties, I should have to say that the presumption arising in the defendant's favor from the absolute nature of the deed has not been overthrown. That being the case I must look further to the other circumstances of the case to ascertain if possible which of the absolutely conflicting statements may be said to be so corroborated as to warrant acceptance for the truth.

Is there then in the collateral facts and circumstances anything which banishes doubt from the mind and clearly persuades the court that the truth lies on this side or that of the matter? An examination of such collateral facts fails to do this. It is true that the complainant continued to live on the twelve-acre parcel after the reconveyance and down to the sale to Mr. duPont, and since then has lived on the Pennsylvania farm. But on the other hand the defendant bore the main expense of the properties. She paid the taxes and did a great deal towards maintaining the complainant's home. This appears to have been done by her out of affection for her sister whose lot in life had not, it seems, been a particularly happy or comfortable one, and when the complainant moved to the Pennsylvania farm, the defendant says she allowed her to live there not only because of the same sisterly affection but as well in order to provide a home for her invalid brother who had been living with the defendant on the old place and who, since the sale to Mr. duPont, was without a home. This explanation of why the defendant allowed the complainant to keep possession of the old and new places, rent free, I accept as the true one. It negatives the sug-

gestion that the defendant was in possession as a beneficial owner. The defendant's checks which are in evidence and on which memoranda are found indicating that the amounts covered by them were spent, some for the complainant and some for her husband, do not necessarily mean that such expenditures were made by the defendant in response to a trust obligation to the complainant as contended by her solicitors. They may of course mean that. But they may with equal plausibility mean what the defendant states, viz., simply that she used the method of memoranda on checks to preserve evidence of how much money she had laid out from time to time for purposes that the Rentouls were benefited by. The memoranda were placed on the checks after they had been paid and had come back to her from the bank, and she testifies that the reason for this was that she and Mr. Rentoul would often have unpleasant and at times rather bitter controversies, upon which occasions she would go to her checks and note thereon the memoranda in question in order to show to what extent she had paid out moneys from which Mr. Rentoul and his wife were benefiting. This may be said to be an unusual procedure for a person to follow. Yet it is not at all improbable to find it indulged in by a person whose business practice is so crude and inexperienced as the defendant's evidently was. No witness contradicts the defendant's account of how the memoranda were placed on the checks by testifying that they were put there at the time the checks were issued. The total amount of the checks in evidence upon which the memoranda appear, is about one thousand dollars, and the complainant argues that this amount closely corresponds with the sum which the defendant was to spend from the ten thousand dollars on account of the Pennsylvania farm and its equipment after the nine thousand dollars purchase price was deducted. Thus, it is said, the complainant's claim touching the true ownership of the money is corroborated. But if this be so, I am at a loss to know why the defendant noted on $989.70 of these checks the name of Edward S. Rentoul, to whom there is no claim of a fiduciary duty to account by the defendant. To say that the memoranda on these checks show by implication an admission by the defendant of an obligation to Mrs. Rentoul to account for about one thousand dol-

lars, as is insisted, is going to a great length when the name of Mrs. Rentoul is noted on only $110.40 worth of them.

Something has been sought to be made by the complainant of the fact that the twelve acres of land reconveyed by her to the defendant in 1912 was worth more than the sixteen hundred dollars, the consideration named in the deed. If this be so, it is argued, it is not reasonable to suppose that the complainant would have reconveyed the land for that consideration unless the defendant agreed to account to her for what excess value over that sum it might eventually yield if sold. And so, it is said, the consideration named in that deed of reconveyance is in itself corroborative of the complainant's statement of the trust character of the transfer. Now as to this, it is first to be noted that neither party to this cause says that sixteen hundred dollars was the real consideration for the reconveyance. The defendant says that the true consideration was sixteen hundred dollars (the amount of her mortgage against it) and money loaned to and advanced for the complainant considerably in excess of the nine hundred dollars cash which Mr. Rentoul paid to her at the time of the purchase from her. According to the defendant, therefore, the consideration paid by her for the reconveyance was over twenty-five hundred dollars. The complainant on her side admits that the defendant had an interest by way of a consideration at least as great as two thousand dollars, being made up of the mortgage lien of sixteen hundred dollars and four hundred dollars more to cover back interest and money owed by her to the complainant. Thus the two parties are not far apart upon the question of the measure of the defendant's money interest in the farm. The important question is whether, as the defendant claims, her interest was the entire absolute interest or, as the complainant claims, it was an interest to the extent only of two thousand dollars, all excess over that belonging to her. And upon this question, as before observed, the complainant argues that the value of the land was so much greater than two thousand dollars, or even twenty-five hundred dollars, that it cannot be supposed she would have reconveyed the title without an agreement from her sister that the twelve acres or its proceeds should be hers after the mortgage and debt to the sister, two thousand dollars in all, were provided for. Thus the question of value is interjected

into this case. Upon that question witnesses were called. It is significant that in 1901, eight years before the complainant bought the twelve acres from her sister the mother agreed to sell twenty-five acres of this land for four thousand dollars. I take that as a fair indication of value at that time. If values had not changed during the eight following years, the twelve-acre tract bought from the defendant would have been worth not over two thousand dollars. The defendant according to her statement sold it to the complainant in 1909 for twenty-five hundred dollars. That is a five hundred dollar, or twenty-five per cent., increase over the 1901 standard of value which I have said is a fair one to take as a measure of that year. That appears to me to represent a fair increase for those eight years, and it is not unreasonable to say that in 1912 when it was reconveyed the value had not materially altered. That the value had not grown beyond twenty-five hundred or twenty-six hundred dollars in 1912, when the reconveyance was made, is indicated by the opinion of men who have lived in the neighborhood for many years. There is testimony from Mr. Cook who disagrees with these witnesses in that he thinks that in 1912 the twelve acres were worth as much as seven thousand dollars. But this is a matter of opinion. The preponderance of evidence makes me believe that the parties, if they were guided by what they thought was the value, probably considered it to be what the opinion of the residents of the neighborhood as reflected by the testimony of the witnesses referred to indicated, namely, about twenty-five hundred dollars. If this be so, then no argument can be based on the suggestion that the complainant in her reconveyance returned to the defendant land which was far in excess of the value which the defendant claims to have given for it. At all events the premise upon which the argument is founded, if not demonstrated to be unfounded, is too uncertain to justify allowing the case to turn on it.

I think I have now mentioned and examined all the principal collateral circumstances to which the complainant appeals as corroborating her account of the transaction with her sister and as tipping the scales in her favor. They do not seem to me to do so. The presumption which inures to the benefit of the defendant, somewhat fortified by other circumstances in her favor, has not been satisfactorily overcome. I have such doubt concerning the

existence of the alleged trust, that I confess I should be fearful that I had done the defendant a wrong if I should enter a decree against her. This being so, such a decree ought not of course to be entered.

The foregoing is in itself enough to dispose of this case against the complainant. But if it were not, what follows is sufficient to warrant a denial of the relief sought. I now proceed to consider the second defense raised to the bill:

Second. Under this head, the defendant contends that relief should be denied the complainant because her hands are not clean. On the complainant's own showing, it is contended, the trust which she asks this court of equity to enforce in her behalf was created for an inequitable purpose.

The evidence shows that when she made the reconveyance, she was threatened with suit on a note upon which judgment in due course was shortly thereafter obtained. Her own statement is to the effect that the purpose of the reconveyance was to save her land from being sold away from her by her creditor. The defendant, she says, was to hold the land until she could pay her debts or sell it and out of the proceeds settle the claims against her. It is significant, however, that when the land was sold and turned into money, neither was the judgment obtained against the complainant paid nor did she insist or suggest to the defendant that it should be paid notwithstanding the proceeds were abundantly ample to pay it. She now says that the debt was forgiven by her father-in-law, who was the judgment creditor. But the judgment is still an unsatisfied one of record, and at the time of the sale of the land to Mr. duPont the complainant still thought it was unforgiven by her father-in-law. That the desire on her part to defeat this judgment was a continuing one is evidenced by her statement that the title to the Pennsylvania farm was not put in her name at the time of its purchase in 1918 because of this judgment, or note as she called it. There was a clear intent on the complainant's part when she made the recoveyance in 1912 and when the title to the Pennsylvania farm was kept out of her name in 1918, to defeat, delay or hinder her creditor. Such an intent, whether disclosed by the bill or by proofs at the hearing, deprives the complainant of standing in a court of equity, although the answer may not set up such a defense. *Pierson v. Pierson*, 5 *Del. Ch.* 11.

Everything that the complainant actually did indicates a purpose to defeat or delay her creditor. Her present statement that she wanted him paid is quite at variance with what she actually did and at least shows a purpose to delay and hinder, a purpose which was successfully accomplished, for ever since May, 1913, when the judgment was recovered down to this day the debt has remained unpaid. I think it is a clear case where equity on well-settled principles should decline to aid her. The authorities cited in her behalf on this point, do not appear to me to suggest a holding to the contrary.

On either ground, therefore, the bill should be dismissed—on the first, because the evidence fails to establish satisfactorily that the purpose of the reconveyance was as claimed by the complainant; and on the second, because, if the purpose was as claimed by the complainant, it was such an inequitable one as to deprive her of any standing in a court of equity.

A decree will be entered dismissing the bill with costs on the complainant.