WILLIAM J. HAGGERTY,

*vs.*

WILMINGTON TRUST COMPANY, Guardian for Anna Marie Haggerty (a minor), and ANNA MARIE HAGGERTY, widow of Joseph A. Haggerty, deceased.

*New Castle, July* 26, 1937.

*Robert G. Harman,* for complainant.

*John R. Nicholson,* for Anna Marie Haggerty, widow.

*Robert H. Richards, Jr.,* of the firm of Richards, Layton & Finger, for Wilmington Trust Company, Guardian.

THE CHANCELLOR: The purpose of the complainant in having the title put in his son's name, hinted at rather strongly in the bill and very definitely revealed in his testimony, was to hinder and delay his creditors. He testified that he had no purpose to defeat their ultimate payment, as he always intended to pay them and did in fact ultimately pay them in full. He later conveyed his three lots to his daughter who paid his bills.

The solicitor for the complainant argues that the fact that the complainant did in fact eventually pay all of his debts, removes from the transaction every ingredient of fraud in the conveyance. The authorities he cites to support his argument on that point do not support it in a case of the instant character. When the question is whether a deed was made in fraud of creditors, and the fraud is denied and sought to be demonstrated by a creditor by the lack of ability on the part of the debtor-grantor to pay existing debts, the fact that the grantor did in fact subsequently meet his obligations is a circumstance tending to show ability to do so and therefore a circumstance relevant to be admitted against the charge of fraud. So, likewise, the fact that the grantor possessed other resources out of which his debts could be made is a circumstance which the law

admits relevant in negativing fraud.  The law does not conclusively hold it to be a fraud on creditors, if a debtor, having other means of payment, makes a voluntary conveyance of a portion of his property.  Where the fraud is sought to be demonstrated as inferable from circumstances, such facts as I have just mentioned are accepted by the courts as relevant to its refutation.  That is all that I understand the cases cited by the solicitor for the complainant to hold.

Now in the instant case, I do not see how it is permissible, in view of the very frank and straightforward testimony of the complainant, to look to circumstantial evidence having to do with other assets available for creditors and with subsequent payment, in order to ascertain whether the complainant's purpose in hiding his title in another's name was to hinder and delay his creditors.  The complainant impressed me as a man who honestly intended some day to pay his debts.  That honesty of purpose, however, does not alter the view which the law takes of the actual purpose of his act, which was to delay, hinder and obstruct his creditors.  That sort of thing, the law pronounces to be fraudulent, however honest may be the hopes and future intentions of the debtor.

There is evidence here, from the lips of the complainant himself, that his purpose was such as the law holds to be fraudulent.  When that is the case, the fact that the creditors could get satisfaction out of other property is immaterial. *Fox v. Moyer,* 54 *N. Y.* 125; *Volkommer v. Cody,* 177 *N. Y.* 124, 69 *N. E.* 277.  It is likewise immaterial, that as a matter of fact it turned out finally that no creditors were defrauded.  *Hildebrand v. Willig,* 64 *N. J. Eq.* 249, 53 *A.* 1035; *Lieb, et al., v. Griffin, et al., (N. J. Err. & App.)* 147 *A.* 634.

Upon the question of what property the complainant had to which his creditors might resort in 1918, when he

arranged to keep this particular one from their reach, assuming it to be material, it is very doubtful if he had enough such other property to satisfy his existing debts. The judgment which was annoying him was for four hundred and sixty-five dollars, and other bills totalled about one hundred dollars. If the interest was in arrears on the judgment, that would add about one hundred and eleven dollars, making the total of all debts six hundred and seventy-five dollars. Against this he had three vacant lots that cost him five hundred and seventy dollars and were assessed at seven hundred and twenty-five dollars. The margin between debts and the forced sales value of available property, if margin there was, was at best exceedinly slender. I am unable to conclude that the complainant believed his three vacant lots furnished ample security for his creditors. That he himself did not think so is quite evident from his own testimony.

In *Pierson v. Pierson*, 5 *Del. Ch.* 11, which was a case of the present type, Chancellor Saulsbury confessed himself to be very much embarrassed by the peculiar statements of the complainant who, although expressly denying a purpose of delaying his creditors, gave testimony which, the Chancellor said, verged closely on a confession that delay was his object in making the conveyance. The Chancellor in that case was able under the evidence, however, to acquit the complainant of entertaining a purpose to hinder and delay his creditors and so to decree a reconveyance. I wish I were able to do so in this case, especially since the widow and child, who is nearly of lawful age, are sympathetic with the complainant's situation.

The principle of *Rentoul v. Sweeney*, 15 *Del. Ch.* 302, 137 *A.* 74, must be applied, which is that as the complainant's hands are not clean in respect of the matter concerning which he seeks relief, a court of equity will deny him relief. There is no difference in principle between the situation where the grantor himself takes title and himself

makes the conveyance, as in *Rentoul v. Sweeney, supra,* and the situation where he causes the conveyance to be made direct to the fraudulent grantee, as here.   *Lieb, et al., v. Griffin, et al., supra.*

In many cases of this general kind, the grantee resists the bill and thereby seeks himself to commit a fraud on the grantor.   When that is so, courts have frequently expressed a regret that the broad policy of the law requires them to permit a party to a fraud himself to take advantage of it to enrich himself.   But as it is better on the whole to afford no comfort and encouragement to wrongdoing, so the policy of equity is to lend no aid to either of its participants. It leaves them in the situation which they created for themselves and in which it finds them.

In the instant case it is to the credit of the widow and daughter of the grantee that they have no desire to withhold from the complainant the property which he says his son agreed to reconvey to him.   This court will not, however, compel the reconveyance.   The complainant will have to wait until his granddaughter arrives at age when she will be legally competent to carry out what her mother says is now her desire, and then hope to secure the conveyance. The daughter's guardian is unwilling to volunteer a conveyance and this court should not, under settled principles, compel it to make one.

The bill will be dismissed.