CLAUDE BANTA, INCORPORATED, a corporation of the State of Delaware; CLAUDE BANTA and PAULINE M. BANTA,

*vs.*

WILMINGTON SUBURBAN WATER COMPANY, a corporation of the State of Delaware.

*New Castle, April* 29, 1946.

*W. Thomas Knowles,* of the firm of Knowles & All-mond, all of Wilmington, for complainants.

*James R. Morford,* of the firm of Marvel & Morford, all of Wilmington, for defendant.

SEITZ, Vice-Chancellor: Complainants, Claude Banta, Incorporated, a Delaware corporation and Claude Banta and Pauline M. Banta, filed a bill of complaint against Wilming-

ton Suburban Water Company, a Delaware corporation. The cause of action set forth in the bill of complaint and the question for decision arise entirely from an agreement which is attached as an exhibit to the bill. While a second agreement is also attached as an exhibit to the bill, it adds nothing to the first agreement but merely reaffirms its terms.

The first agreement is dated December 9, 1933 and reads:

"Claude Banta, Esq.,
"Oak Grove, Delaware.
"Dear Sir:

"The Directors of Wilmington Suburban Water Company, hereby offer to purchase from you all your right, title and interest in and to all the physical assets of a Water Company owned by you in Brandywine Hundred, New Castle County, Delaware, supplying Monterey and territory adjacent thereto, together with all pipe lines, meter connections, power plant, pumping station, equipment and rights of way over your land and the land of Claude Banta Incorporated, and to pay you therefor seven hundred and sixty (760) shares of Preferred stock and one hundred and ninety (190) shares of Common stock of Wilmington Suburban Water Company; you to convey to us a good fee simple title, clear of all encumbrance and also convey to us a lot of land, with a frontage of twenty-five feet on du Pont Circle,      , through which our Company would connect its pipe lines with the water tower on the land of William du Pont.

"The Company further agrees to sell the stock which you thus acquire in the following proportions: No stock to be sold during the year 1934, One-third of the stock to be sold in 1935. One-third of the stock to be sold in 1936 and the remainder in 1937. The sale of said stock to yield you the sum of Nineteen thousand dollars ($19,000.) net. If accepted, the above Contract will be effective as of July first 1934, and in the meantime you will purchase water from our Company for supplying the properties on your line at the usual rates charged other persons in that vicinity by our Company.

"Sealed and delivered in the presence of Wilmington Suburban Water Company

"By S. Newbold Van Trump "President.
        "Corporate Seal    Attest: "M. B. F. Hawkins "Secretary.
"Wilmington Suburban Water Company Incorporated
"Delaware—1933
"The above offer is hereby accepted: "Claude Banta, Pres."

The bill of complaint avers that by virtue of this agreement there came into the complainants' possession 750 shares of preferred and 190 shares of the common stock of the defendant corporation, and that the stock certificates therefor bore the names of Claude and Pauline M. Banta. It does not appear, if it be important, whether the shares constituted original issue or treasury stock.

Next it is alleged that all the conditions of the agreement have been performed, except that portion which provides that "The Company further agrees to sell the stock which you thus acquire in the following proportions; * * * and the remainder in 1937. The sale of said stock to yield you the sum of Nineteen thousand dollars ($19,000.) net."

It is alleged that the defendant has paid complainants $13,200. on account of the agreement and there is attached a schedule of payments made on account of the agreement showing that the defendant has sold 528 shares of the preferred and 132 shares of the common stock of the defendant corporation. It is further alleged that complainants have in their possession standing in the names of Claude and Pauline M. Banta 232 shares of preferred and 58 shares of common stock of the defendant and "that said stock certificates are presently held by Claude and Pauline M. Banta for the benefit of Claude Banta, Incorporated, and Claude Banta and Pauline M. Banta, as collateral security for the payment of Nineteen Thousand Dollars ($19,000.00), or the balance due thereon"; that complainants have never accepted any dividends on any of the stock and that there is presently due and owing to complainants the sum of $5,800., plus interest from January 1, 1938 to date; that complainants have repeatedly since January 1, 1938 made demands upon the defendant to sell the stock "pledged as aforesaid", but defendant has failed to do so "even though there has been a market for said stock."

Complainants then tender the remaining certificates to defendant to enable it, as they say, to make sale thereof,

provided adequate security for payment of the balance of the debt is given or the balance is paid in full.

Complainants pray that defendant be ordered and directed to sell the securities tendered and pay to complainants the money so received; that defendant be ordered and directed to pay to complainants forthwith the difference between the selling price of the stock and the sum of $5,800., with interest from January 1, 1938; that—and this is apparently an alternative prayer—complainants be ordered to hold the stock as collateral security for the payment of the said $5,800., with interest from January 1, 1938, and that upon the public sale of the securities by complainants, the defendant be ordered and directed to transfer the stock to the highest and best bidder, and to pay forthwith to the purchasers all accumulated dividends on said stock, and to pay to complainants the difference between the selling price less the cost and expense of the sale, and the sum of $5,800., with interest from January 1, 1938.

The defendant corporation demurred to the bill solely on the ground that it is apparent from the face of the bill that this court is without jurisdiction because complainants have a full, complete and adequate remedy at law.

The sole question for decision is, therefore, whether the material factual allegations of the bill here taken to be true show that the complainants have an adequate remedy at law. Complainants' solicitor argues that the bill is one to foreclose stock pledged by defendant with the complainants, and he concedes that if the agreement does not constitute a pledge of the stock, then the demurrer should be sustained. Defendant's solicitor urges that the Water Company was exchanged by the complainants for the stock of the defendant corporation, and that the defendant as further consideration merely agreed to sell the stock for the complainants. In this connection, it should be noted that explicitly at least we do not have a repurchase agreement because the defendant corporation agreed "to *sell* the stock" which com-

plainants acquired pursuant to the agreement. (Emphasis supplied.)

Preliminarily, it is conceded that in a proper case equity has jurisdiction of an action to foreclose a pledge. See *White River Savings Bank v. Capital Savings Bank & Trust Co.,* (1904) 77 *Vt.* 123, 59 *A.* 197, 107 *Am.St.Rep.* 754; 4 *Pomeroy's Equity Jurisprudence, (5th Ed.)* § 1231. Complainants, relying on this basis of jurisdiction, contend that, as to the stock, the agreement created a pledge, but in any event, the legal intendment of the document embodying the agreement is not so clearly inconsistent with complainants' pledge theory that a court of equity should foreclose them from a hearing to ascertain the real intention of the parties.

The general principles of the law applicable to pledges are—to venture a cliche—as easy to state as they are difficult to apply. See 41 *Am.Jur., Pledges,* § 4. In the final analysis, the emphasis is on the facts involved, and not the principles of law. The courts decide each case on the basis of the weight which they feel should be given to the particular facts before them so that precedents have only a limited application.

Because this matter arises on a demurrer to the bill, we must examine the facts alleged and give complainants the benefit of all reasonable doubts as to their meaning, having in mind complainants' contention that they received the stock as a pledge to secure the payment of a debt of $19,000.

In resolving this problem, I shall not attempt to differentiate between a contract to sell and a contract of sale because the distinction seems unimportant to the decision here. Complainants also place some reliance upon the fact that the shares here involved were registered in the names of the individual complainants, while the agreement was purportedly with the corporate complainant. Apparently the corporation was closely held by the individual complainants, and in negotiating the agreement no particular attempt was made to distinguish between the parties who are now the

complainants. In any event, in view of the conclusion here-
inafter reached, complainants will have a further oppor-
tunity to develop whatever theories they may have with re-
spect to this phase of the case.

We turn now to the source of the dispute, i. e., the agree-
ment as incorporated in the letter of December 9, 1933.
This letter is addressed to "Claude Banta, Esq." and the
first paragraph reads in part:

> "The Directors of Wilmington Suburban Water Company, hereby
> offer to purchase from you all your right, title and interest in and to
> all the physical assets of a Water Company owned by you in Brandy-
> wine Hundred, New Castle County, Delaware, supplying Monterey
> and territory adjacent thereto, together with all your pipe lines,
> meter connections, power plant, pumping station, equipment and
> rights of way over your land and the land of Claude Banta Incorpo-
> rated, and *to pay you therefore seven hundred and sixty (760) shares
> of Preferred stock and one hundred and ninety (190) shares of Com-
> mon stock of Wilmington Suburban Water Company; * * *.*" (Em-
> phasis supplied.)

The quoted language, when read by one not legally pre-
disposed, leads inescapably, it seems to me, to the conclusion
that the parties contemplated a sale of complainants' Water
Company in return for an interest in the Wilmington Sub-
urban Water Company, evidenced by stock ownership there-
in. It is only when we read the second quoted provision of
the agreement that some doubt is cast upon the absolute
nature of the agreement as set forth in the first paragraph.
It reads:

> "The Company further agrees to sell the stock which you thus
> acquire in the following proportions; No stock to be sold during the
> year 1934, One-third of the stock to be sold in 1935, One-third of the
> stock to be sold in 1936 and the remainder in 1937. The sale of said
> stock to yield you the sum of Nineteen thousand dollars ($19,000.)
> net. * * *"

Some light is shed on the legal character of the resale
provision above quoted by the language of this court in the
case of *In re International Radiator Co.*, 1914, 10 *Del. Ch.*
358, 92 *A.* 255. There, the court considered an agreement

whereby one Harris "in April, 1913, gave to the company his notes aggregating $5,000 in payment for 1,000 shares of stock of the company, of par value of $10, which shares the company agreed to sell for him to net him $7.50 per share, to be paid to him on or before August 1, 1913." The stock was not sold and Harris, who paid the notes filed his claim in the receivership of the corporation based on the agreement. In describing the transaction, this court said:

"* * * In substance, for $5,000, the company agreed to pay $7,500 from the proceeds of the sale by it of shares of its capital stock subscribed for by Harris. The legal effect of the agreement is, of course, that in case it was unable to sell the shares of stock it would buy them back, and the claim filed by Harris is necessarily based on this principle."

It seems to me that the characterization of the provision before the Chancellor in the *International Radiator* case is equally applicable to the provision here involved. While I cannot assume—as the defendant would have me do—that such a provision is illegal in operation because complainants have not alleged facts which would render it legal under Delaware Corporation Law as not being a payment out of capital, nevertheless, to the extent that the sale provision is labeled a repurchase agreement, I feel that it is authority contrary to complainants' contention that we are here dealing with a pledge.

Of course, a contract of sale does not necessarily lose its identity as such because of a resale or a repurchase provision in the same agreement. As stated in 49 *C.J., Pledges*, § 11,

"A transaction which on its face constitutes a sale will not be converted into a pledge by a mere agreement to repurchase or resell or redeem."

The possibility that the defendant corporation might have made a profit of the resale of the stock is not inconsistent with the conclusion that the complainants sold their Water Company for stock in the defendant corporation. Thus, in *Reeves and Co. v. Sebern*, 1864, 16 *Iowa* 234, 85

*Am. Dec.* 513, the court considered an agreement for a sale of goods for a certain sum, with a further agreement that if, when sold, more than said sum should be realized, the excess after deducting expenses of sale, should be credited to the vendors. It was contended that the transaction did not amount to a sale of the goods. Both in the cited case and in the case at bar, the effect of the provision was to permit a possible additional profit by the vendor of the property. This feature of the present transaction may be said to sound in pledge rather than in sale, but as the court said in the cited case:

"To a bona fide arrangement of this kind we can see no objection, nor does such a stipulation for an additional contingent consideration, transmute, ex necessitate, a sale into a pledge or mortgage."

Speaking of the agreement itself, I conclude that it evidences a sale of the stock and not a pledge.

Complainants contend, however, that because of the allegation in their bill that they hold the stock as collateral security for payment of the balance of the indebtedness of $19,000, therefore, they are entitled to a hearing in order that they may show that the agreement was one of pledge and not of sale in so far as the stock is concerned. While it is doubtless true, as complainants contend, that the entire transaction is scrutinized in determining whether the parties intended a pledge or a sale, nevertheless, I must decide whether evidence would be properly admissible at a final hearing to vary the interpretation which I have placed upon the agreement. If some such evidence would be admissible, then the demurrer must be overruled, but if not, then the demurrer must be sustained.

Would evidence tending to show that complainants sold defendant their Water Company for $19,000. and took defendant's stock as collateral security be admissible to explain the written agreement, or would such evidence violate the parol evidence rule? At examination of the authorities reveals that the courts have not permitted the use of the words

"sale" or "pledge" in agreements to foreclose independent examination by way of other evidence as to their true legal nature. As stated in 49 *C.J., Pledges*, § 32:

"In accordance with the general rule that parol evidence is admissable where it is offered, not for the purpose of varying the terms of a written contract, but for the purpose of explaining and showing the real nature of the transaction, parol evidence is admissible to show that an assignment or transfer of personal property, absolute on its face, was in reality intended only as a pledge or other security; and such fact may also be shown by written evidence * * *"

See also 41 *Am.Jur., Pledges and Collateral Security*, § 4.

While the agreement, considered alone, purports to be a sale of the stock, I believe a court of equity must consider appropriate evidence tending to show that what appears to be an outright sale is in fact a security arrangement. The authorities support this conclusion, particularly where there is some doubt cast by the instrument itself. In the agreement here involved, there is a provision for sale of the stock by the defendant corporation and the agreement is vague as to the beneficiary of any sum received for the stock in excess of $19,000. It seems to me that these two matters, plus the allegations of the bill as to the nature of the transaction, entitle complainants to a hearing. However, because of my conclusion that the written agreement is more consistent with a sale than with a pledge, the burden of varying this result will properly fall upon the complainants. See 49 *C.J., Pledges*, § 31.

Since the demurrer attacks the bill solely on the ground that this court lacks jurisdiction because the complainants have an adequate remedy at law, the demurrer will be overruled in the light of the conclusions reached herein. While complainants' allegations as to the nature of the agreement lack that certitude and elaborateness which is to be desired, and while it also sounds in the nature of a legal conclusion,

nevertheless, I believe it is also sufficiently factual to permit the defendant to answer and to defend intelligently.

An order accordingly will be advised.

Note. After final hearing the bill of complaint was dismissed without written opinion.