**H. Struve HENSEL, Plaintiff,**

**v.**

**U. S. ELECTRONICS CORPORATION,
a Delaware corporation, Defendant.**

Superior Court of Delaware.

New Castle.

March 7, 1969.

H. Albert Young, Edward B. Maxwell, 2nd, Jack Jacobs, Young, Conaway, Stargatt & Taylor, Wilmington, for plaintiff.

William J. Alsentzer, Jr., Wilson & Lynam, Wilmington, for defendant.

## OPINION

O'HORA, Judge.

For approximately fifteen years plaintiff herein, an attorney, was employed by the United States Government, in various high executive positions. Upon his resignation from his last position, in 1955, he became a member of the Board of Directors of the defendant, U. S. Electronics Corporation, a Delaware corporation, of which one Leon Frenk is president, a director, and majority shareholder.

Following a December 3, 1965 meeting of defendant's Board of Directors, plaintiff's resignation from the Board was imminent, but plaintiff and defendant had been unable to agree upon certain legal fees which plaintiff claimed were due to him. The parties finally reached an agreement, embodied in a writing signed, sealed and dated February 16, 1966, the pertinent parts of which are as follows:

"1. In November, 1955, Hensel was given by Frenk, without cost to him, certificate No. 3 representing 85 shares of the common stock, without par value, of Electronics. Certificate No. 3 is registered in the books of the Company as being in Hensel's name and is still held by him.

2. In 1956, Hensel became Chairman of the Board of Directors of Electronics and, except for a short intervening period, served as such and gave Electronics legal advice thereafter * * *.

3. Electronics, through its wholly owned subsidiary American Aircraft Engineering Corporation (hereinafter called "American"), acquired, * * * under a contract with the Air Force of the Republic of Chile a promissory note * * *.

6. Hensel and Electronics now desire formally to sever, terminate and satisfy all relationships between them, including that of Hensel being a stockholder of Electronics.

10. Hensel simultaneously herewith also wishes to sever, determine and terminate all other business relationships heretofore existing between Hensel and Frenk, including, but not limited to, Mundial Trade Corp., World Recovery Corp., Western Tube Division and Technical Equipment Corp.

**830**

NOW THEREFORE, in consideration of the foregoing and the promises hereinafter set forth, the parties herein agree as follows:

a. Hensel agrees to sell, transfer and set over, and does hereby sell, transfer and set over, to Electronics 85 shares of the common stock of Electronics represented by certificate No. 3 for the price of $26,500 payable as follows:

(i) the sum of $10,000 upon the execution and delivery of this agreement, the receipt of which is hereby acknowledged by Hensel; and

(ii) the sum of $16,500 payable * * * on December 31, 1966 * * *.

c. As full compensation for any services rendered to date by Hensel to Electronics and to Frenk, including any person or corporation associated with or related to Frenk, Electronics does hereby transfer, assign and set over, and agree to use its subsidiary, American, * * * to transfer, assign and set over to Hensel all its and their right, title, interest and ownership to and in the Chilean Note and all claims related thereto, without recourse.

f. Hensel does hereby exonerate, release and discharge Electronics, American, Frenk, Mundial Trade Corp., World Recovery Corp., Western Tube Division and Technical Equipment Corp., from any and all claims, debts, and demands whatsoever which he may have or could claim or demand as a result of Hensel's relationship existing between Hensel and Frenk, his executors, heirs, or assigns, or with any of said corporations or their assigns, to the date of these presents."

As of May 12, 1967, the $16,500 balance provided for in Paragraph 10. a. (ii) of this agreement, had not been paid. Hensel therefore instituted an action in the United States District Court for the District of Delaware against defendant to recover the sum due. To induce plaintiff's forebearance, defendant executed and delivered to plaintiff a promissory note for $16,500 at 6% interest, half of which was due and payable on October 1, 1967, and half of which was due and payable on December 30, 1967. In return, plaintiff voluntarily dismissed his suit. When defendant failed to meet the terms of its note, this suit was instituted thereon.

Defendant resists judgment against it by raising the defense of failure of consideration. It contends that Frenk never gave plaintiff the 85 shares of stock outright, but that, instead, he transferred the stock subject to a condition that Hensel would either exercise an option during his directorship to purchase the stock at its current book value or else return the stock upon his resignation as a director. In support of this contention defendant offers various affidavits, among them affidavits by Russell Bolton, Executive Vice President of the National Savings and Trust Company in Washington, D. C., and by Arthur E. Tarantino, a practicing attorney in Washington, D. C. These men were both offered directorships in defendant in 1955. Bolton accepted the position and received 85 shares of stock which he returned to Frenk upon resigning from the Board, his option to purchase the shares never having been exercised. Tarantino declined to become a director, although he knew of the option to purchase 85 shares of stock. Additional support for defendant's postition comes from the minutes of the December 3, 1965 meeting of defendant's Board of Directors, which reflect that plaintiff acknowledged Frenk's ownership of the stock which he, plaintiff, was holding merely as a trustee.

Plaintiff here moves for summary judgment on the note.

Plaintiff's theory is that, apart from the question of the true ownership of the

stock, any dispute between defendant and himself regarding this issue was settled and an accord reached when plaintiff accepted defendant's promissory note in return for dismissal of his earlier suit in the District Court. To test the compatibility of this theory with the law of this jurisdiction, it is necessary to examine the holding in State for Use of Warner Co. v. Massachusetts Bonding & Ins. Co., 9 A.2d 77 (Del.Super., 1939). There the plaintiff had contracted in writing to furnish the defendant with concrete, for which the terms of payment were 30 days net cash and a 5% discount for cash paid prior to the 15th of each month. Although defendant paid nothing until after three months from delivery, it nevertheless claimed the discount, apparently because the discount had been allowed under similar circumstances in the parties' prior dealings. The plaintiff, after accepting defendant's check labeled "in full payment" sued for the remainder of the net price. In rejecting defendant's assertion that an accord and satisfaction was reached by cashing of the check, the Court said:

> "We must therefore see whether the claim of the plaintiff was subject to a bona fide dispute on the part of O'Connell so as to invoke the doctrine of accord and satisfaction. The dispute must be an honest, genuine, or bona fide dispute advanced in good faith and resting on a substantial basis * * * or founded on some reasonably tenable or plausible ground. * * * The dispute need not be in fact established or based upon a solid foundation, but there must be some justification therefor and not a mere arbitrary refusal to pay."

Since the terms of payment were clear, the *Massachusetts Bonding* court found defendant's refusal to pay merely arbitrary, with the result that "there was no substantial or tenable basis for the dispute" such as would support an accord and satisfaction.

Plaintiff reads the above quoted language as adopting a recently enunciated view that surrender of an invalid claim or defense is good consideration if at the time of surrender, it was either actually doubtful, due to uncertainty as to the facts or the law, or honestly believed in by the forebearing party. Restatement 2d, Contracts, Tentative Draft No. 2 (1965) § 76B. This view might be tenable if the court in the *Massachusetts Bonding* case can be said to have held that the dispute (1) must be an honest, genuine, or bona fide dispute advanced in good faith and resting on a substantial basis, or (2) founded on some reasonably tenable or plausible ground. However, it is equally logical to view the quoted language as saying that the dispute must in all events be honest, genuine, bona fide and advanced in good faith, and then in addition must either (1) rest on a substantial basis, or (2) be founded on some reasonably tenable and plausible ground. This latter view finds support in the cases cited by the *Massachusetts Bonding* court as authority for its position. Both of the cases cited therein contain this language: "such dispute must be an honest one and based on some reasonably tenable grounds * * *." Detroit Belt Lacer Co. v. Fowler Co., 4 S.W.2d 651 (Tex.Civ.App. 1928); Sawyer v. Somers Lumber Co., 86 Mont. 169, 282 P. 852 (1929). Neither case stands for the proposition that a dispute based on some plausible ground is good consideration even though advanced in bad faith.

■ In Modern Dust Bag Co., Inc., v. Commercial Trust Co., 34 Del.Ch. 354, 104 A.2d 378 (1954) the Court said:

> " * * * Is the dispute an honest, genuine, bona fide dispute, advanced in good faith *and* resting on a substantial basis, *and* founded on some reasonable, tenable or plausible ground? If it is, then the dispute need not be in fact established or need not be based upon a solid foundation. Plaintiff must show

only that there is some justification for its contention and that the dispute does not represent a mere arbitrary refusal on the part of plaintiff to pay a just indebtedness." (Emphasis added).

It was clearly the opinion of the Chancellor in the *Modern Dust Bag* case that the *Massachusetts Bonding* decision required a good faith dispute in all events. No other view is possible in light of the authorities cited by the *Massachusetts Bonding* court in support of their rule. The question, therefore, must be considered resolved against the construction urged by plaintiff.

It should be noted, however, that the same result would be reached even if the new Restatement theory correctly expressed Delaware law. In requiring as one alternative that "the claim or defense is in fact doubtful because of uncertainty as to the facts or the law", the draftsmen must have intended that the doubt required be of honest and genuine origin. They must have intended that the doubt be other than that which the party seeking to enforce the accord created by his own deceit. Otherwise any debtor could create uncertainty as to the facts by untruthfully asserting that the note bearing his signature was obtained through fraud, theft, duress, etc. The threatened delay and expense of litigation to prove the lie might well force the creditor into a settlement and accord. It cannot be imagined that the draftsmen of the Restatement meant to undo in one stroke all the Common Law protection against blackmail by means of the nuisance value of a suit. Rather, they must mean

only to protect the accord reached when a party surrenders a claim which, though genuinely doubtful, nevertheless was believed by him to be unjust and not likely to be adjudged valid.

The crux of defendant's case is that plaintiff knew that his claim to the stock was an arbitrary fabrication. Defendant's affidavits tend to support the fact that the same amount of stock as plaintiff claims was given gratuitously to him, was transferred at approximately the same time and under similar circumstances to one other director and offered to another person if he became a director, on terms which gave the transferee no right to the stock until it was paid for. The corporate minutes offered would also tend to show that plaintiff acknowledged true ownership of the stock as being in Frenk. If these facts are correct, then there cannot have been a genuine dispute on which to reach an accord. There can only have been the threat of a suit at a time when defendant was financially strained and needed to protect its credit rating against the adverse effect that pendency of a suit would have had upon it. Thus, even under the Restatement view, plaintiff forebearance would not amount to valid consideration for defendant's note.

■■ Plaintiff counterargues that defendant's affidavits must be discredited as parol evidence, which is inadmissible to vary the terms or defeat the operation of a sealed instrument. Assuming arguendo that the affidavits do in fact contradict the factual recitals in the sealed agreement,[1]

---

1. Paragraph 1 of the Agreement recites that "Hensel was given by Frenk, without cost to him, certificate No. 3 * * * " The "him", strictly speaking, is ambiguous. It might indicate that Frenk transferred the stock without parting with its ownership and hence with its value. Parol evidence would be admissible to explain the ambiguity. For a comparably far-fetched situation see Claude Banta, Inc. v. Wilmington Suburban Water Co., 29 Del.Ch. 148, 46 A.2d 876 (1946).

With regard to the conclusiveness of recitals that plaintiff will "sell" the stock as establishing his ownership thereof, see Sharpless-Hendler Ice Cream Co. v. Davis, 17 Del.Ch. 161, 151 A. 261 (1930) wherein parol evidence was admitted to show that plaintiff had no "established wholesale prices" as recited in a contract binding defendant to buy exclusively from plaintiff at its "established wholesale prices".

nevertheless they are not offered for the purpose of contradicting these recitals and thereby changing the meaning of the instrument. Instead they are offered to show failure of consideration. They tend to prove that plaintiff does not own the 85 shares of stock bargained for, and therefore cannot fulfill his side of the agreed exchange. Failure of consideration is a good defense to a contract, even one under seal. Stabler v. Ramsay, 30 Del.Ch. 439, 62 A.2d 464 (1948).

■ It cannot be doubted, of course, that where two considerations are given for the same promise, one of which is legally sufficient while the other is not, the contract may be enforced. 1 Corbin, Contracts, § 126; 1 Williston, Contracts (3rd ed.), § 134. Defendant, however, does not resist enforcement of the contract on the theory that part of the bargained for consideration, though received, is not such consideration as standing alone would be sufficient to support a contract. Defendant's ground for resistance is that part of the bargained for consideration cannot be given by plaintiff to defendant because it is not his to give. The fact that plaintiff's release of all claims against defendant is legally sufficient standing alone to support the validity of the 1966 agreement is immaterial because the validity of the agreement is not in dispute. Defendant simply demands that before completing performance on its part, plaintiff has the ability to complete performance on his part, which means that he must not only have executed a release but also have validly transferred certain stock to defendant, as he agreed to do.

Plaintiff makes various other arguments, one striking down a theory of duress which defendant never raised, another suggesting that any inference of "blackmail" is negated by defendant's failure to demand return of the $10,000 already paid and to refuse payment of interest on the note, at a time when defendant's strained finances made any sort of litigation much to be avoided. These arguments are plainly specious.

■ Defendant having raised by its affidavits an unresolved question of fact material to plaintiff's claim, the motion for summary judgment should be denied.

It is so ordered.